Pearson J.
 

 The ease turned upon the location of one of the lines of a lease of one Williams, by the Tuscarora Indians, dated in 1803, and to continue from the date thereof until 1916. The lease called for the run of Miry Branch • thence down the branch to the ran of Town Swamp; thence down the swamp to the Swash ; thence
 
 down the swash to Coniot Swamp ;
 
 thence, <fcc.
 

 It was argued that the line down the swamp struck the swash at the mouth of the run of the swamp, a point on the south side of the swamp, and that the next corner was a point at the mouth of Coniot Swamp. The question was, how the line run from the point at the mouth of Town Swamp, to the point at the mouth of Coniot Swamp. It was proven that the water from Town Swamp ran, in low water, through the Swash, in a defined channel and emp
 
 *380
 
 tied iri^o a place called “Broad Water,” and thence into Coniot creek, some distance from the point at the mouth of Coniot swamp, and thence down the creek to the river. In high water the swash was all covered, and there was no perceptible run or channel. The swash was a low, boggy tract of country, varying from three quarters of a mile to a mile in width, and reaching from the mouth of Town swamp to Coniot swamp.
 

 The defendant contended, that the line run from the point at the mouth of the run of Town swamp, along the channel defined in low water, through the swash, into “ Broad Water,” and thence to the point at the mouth of Coniot swamp; and that, whether that, or the edge of the swash, was the boundary, was a question for the jury.
 

 The plaintiff contended, that from the point at the mouth of Town swamp, the line was
 
 along the edge,
 
 of the swash, to the point at the mouth of Coniot swamp.
 

 The Court charged, that, it could not be laid down, as a matter of law,.that in running down the swash, the line must be located along the channel defined in low water, through the swash, or along the edge of the swash, and “left it to the jury, as^a question of fact,” to find from the evidence, where the line was to be located ; telling them it must go down the swash from the point at the mouth of Town swamp to the point at the mouth of Coniot swamp. In this there is error.
 

 What are the boundaries of a tract of land, is a question of law. It is a mere question of construction. Where a line is, and what are the facts, must, of course, be found by the jury. In this case, two points are agreed
 
 on,
 
 and the boundary is a direct line from one point to the other, unless there be something to vary it. The Court concurs in the opinion, that the channel, defined in low water, through the swash, is not the line, because it does not lead
 
 to
 
 the point. A majority of the Court are inclined to the
 
 *381
 
 opinion, that the words, “down the swash,” do, under the circumstances, indicate the direct line, and mean
 
 along or down the edge of the swash.
 
 I confess I incline to a dif-ieren t opinion, because the words “down the swash,” are satisfied and correspond with a direct line. But it is not necessary to determine this question: for, take it either way, the plaintiff is entitled to a
 
 venire de novo,
 
 and it is only mentioned, in order that, upon the next trial, the attention of the parties may be called to it, so as to have it laid down on the plat, in reference to the
 
 locus in quo.
 
 It is assumed, that the smash reaches to Coniot swamp. This depends upon whether “Broad Water” is a part of the swash. This fact should be distinctly found, as it may affect the opinion of a majority of the Court upon the question of construction.
 

 . As the case is to be tried again, it may be well to say, that upon the questions of evidence, we concur with his Honor. There is no statute requiring leases for years to be registered. Of course, the act of 1846, in regard to registered copies, does not apply to them: and it may be well, in this way, to call the attention of the Legislature to the fact, as there seems to be the same reason for requiring leases for years, especially long leases, to be registei’ed, as deeds for freehold estates. Until 1819, leases for years were not required to be in writing.
 

 It was proper to reject the maps, as they were not proved to have been made before the lease, under which the defendant derived title.
 

 Proof of a deed by one witness is sufficient: and proof of the handwriting of one witness, both being dead, is also sufficient. This is settled.
 

 Per Curiam.
 
 Venn e de novo
 
 awarded.