A. C. OSBORNE *v.* ELI F. JOHNSTON.

Where the call of a deed was for a boundary on the north by the land of J. R. and J. R., had a tract of land belonging to himself, part of the southern boundary of which was north of the land described, and had, as tenant in common with another person, another tract, lying also north of the land in question, it seems to be erroneous in a Court to charge the Jury merely that the call in the deed, which was for the land of J. R., meant the land of J. R., lying north of the land in dispute.

Where the *locus in quo* was a peninsula formed by the bend of a river, and the question was as to the adverse possession of that land by the defendant, and it appeared that he ran a fence partly on his own land and partly on that of another person, across the neck of the peninsula, so that it excluded the cattle of other persons from ranging upon it, except by crossing the river, and opened a gate in his fence for his own cattle to get upon it, *it was held* that the defendant had no adverse possession of the land in the peninsula, unless he had made the fence across the neck for the avowed and unequivocal purpose of taking possession of the peninsula, and using it for a pasture as his own land.

This was a civil action brought by the plaintiff against the defendant under the C. C. P., to recover possession of the tract of land described in the complaint, tried before *Mitchell, J.,* at the last term of the Superior Court for the county of ALLEGHANY.

The facts material to a proper understanding of the case were as follows : The land in dispute consisted of about forty acres, lying in a peninsula formed by a bend in New River. The western side of the land abutted on the river, but it extended only a part of the way to the river on the east. The plaintiff claimed under a grant from the State, dated in the Spring of 1870, and offered evidence tending to show that it was vacant at the date of the entry ; and the defendant claimed under a deed made in 1823 from William Reeves to Jesse Reeves, which described the land as " my home place, bounded on the west by New River, on the south by the lands of James Wellborn, on the east by the lands of

James Toliver, and on the north by Jesse Reeves' own land." The western, southern and eastern boundaries of this land were proved to be as described, but as to the western boundary, the proof was that Jesse Reeves owned the land lying north of the disputed land next to the river in the inner end of the peninsula, which was also north of the said land so granted by William to Jesse Reeves; and it was further in proof that at the date of the deed there was another tract of land called the Jesse Reeves land, but in fact owned by him and another as tenants in common, which extended a part only of the way along the northern boundary of the land granted by William to Jesse Reeves. It was admitted that if the deed for this tract of land from William to Jesse Reeves called for both of these tracts, or for only the first mentioned, it would cover the land in dispute, but if it called for the last only, it would not cover the disputed land. The plaintiff contended that the call of the deed from William to Jesse Reeves would be satisfied by holding that it should be confined to the last mentioned tract of Jesse Reeves, and asked his Honor so to instruct the Jury, but he declined to do so, and told the Jury, "that the call in the deed from William to Jesse Reeves, which called for Jesse Reeves' own land on the north, meant the land of Jesse Reeves lying north of the land in dispute."

During the progress of the trial a question arose as to the occupation of the disputed land by a person under whom the defendant claimed, as to which it was testified that he had no actual occupation of it, except that his cattle ranged upon it. It was also testified that about the year 1837, in fencing his fields on the old Reeves tract, he fenced all the way across the peninsula above the disputed land, leaving a lane into the peninsula, across which he had a gate, through which he turned his own cattle into the disputed land in the peninsula, and the effect of the fence was to exclude from the disputed land the cattle of all other persons

except such as could cross the river at certain fords which were shallow enough to allow of such ingress. The plaintiff contended that no such adverse possession had been proved as to ripen the title of the defendant under the doctrine of possession under the color of title, even if the deed under which defendant claimed did cover the land in dispute, and requested his Honor so to instruct the Jury, but he refused such instruction, and told the Jury that if defendant's fence ran across the whole peninsula, and he used the land below his said fence on the peninsula as a range for his own cattle, exclusive of other cattle, although the river around the peninsula would, at places, be crossed by cattle, and other people's cattle actually did cross over and intermingle among defendant's cattle, still his possession of the disputed land would be such as would ripen a color of title into a good title.

There was a verdict and judgment for the defendant, and the plaintiff appealed.

*Folk*, for the plaintiff.
No counsel for the defendant.

PEARSON, C. J. What are the boundaries of a tract of land, is a question of law, to be decided by the Court, in putting a construction upon the deed. Where the boundaries are, is a question of fact for the jury.

By the statement of the case, it is agreed, that if the boundaries of the deed of William to Jesse Reeves be the line of a *certain* tract, owned by Jesse, the deed does not include the *locus in quo.* If the boundary be the line of a certain other tract, owned by Jesse, or if the boundary be the lines of both of the tracts, then the deed does include the *locus in quo.* As far as we are able to understand the case, we incline to the opinion that it was the duty of the Judge to have decided this question, and to have instructed

the jury, either that the line of the one tract, or of the other, or of both, was the boundary of the deed. The effect of his decision one way or the other, being agreed on as a matter of fact, in reference to the *locus in quo;* there would have been nothing for the jury on that point. It seems to us to be error, to leave the jury to grope their way in the dark, without any instruction save "that the call in the deed from William to Jesse Reeves which called for Jesse Reeves' own land, meant the land of Jesse Reeves lying north of the land in dispute." It would have been more satisfactory, had the case been accompanied by a diagram, and copies of the deeds, to enable this Court to see that the point was presented. Assuming that this part of the case turned upon the question as to whether the boundary was the line of the one tract or of the other or both; that certainly was a question of law, dependent upon the construction of the deed, which from the confused manner of stating the case, is so hard of solution, that we should have remanded the case for a second trial.

The defendant being entitled to a *venire de novo* on another point, prevents the necessity of remanding it.

Upon the other point, according to our understanding of the facts, we differ with his Honor; although in this particular, likewise, the statement is not as clear and satisfactory as could be desired. It is set out, that Doughton in fencing his fields, on the old Reeves tract, ran the fence across the neck of a peninsula formed by the bend of the river, and thus closed access to the peninsula, except by crossing the river, and to avail himself of the peninsula which was thus closed, as a pasture for his cattle, Doughton fixed a gate in the fence, where it crossed the peninsula. It is also set out, that a portion of the peninsula was owned by another person; so Doughton's fence across the neck was partly on his own, and on the land of another, and thus closed access

to the land of the latter in the peninsula as well as to the other part of it, which is the *locus in quo.*

If Doughton made the fence across the neck, for the avowed and unequivocal purpose of taking possession of the peninsula, and using it for a pasture as his own land, it may be such a possession would ripen the title.

But if he made the fence for the purpose of "fencing in" a field on the old tract lying north of the peninsula, the circumstance, that by reason of the river a part of his fence had the additional effect of closing the peninsula, except by crossing the river, would not constitute such a possession as to ripen the title. To have that effect, the possession must be adverse, uninterrupted, open, and unequivocal; so as to expose the party to an action. This is the teste. Suppose a grantee of the state had sued Doughton for making the fence across the neck, and thereby taking possession of the peninsula, he could in this view of the case have said, "I made the fence in order to enclose the field on the old Reeves tract and turned my cattle out in the range through that part of my fence, and the accident that the river happened to run in such a manner as to exclude the cattle of other people, no more makes me a trespasser than if I had turned my cattle into the range at any other place." If this view of the facts be the true one, he did not expose himself to an action.

The matter ought to have been submitted to the jury with this explanation, as to what constitutes such a possession as will ripen color of title. It was error simply to say "If Doughton's fence ran across the whole peninsula, and he used the land below, as a range for his own cattle exclusive of other cattle, &c., his possession would be such as would ripen color of title into a good title."

There is error.

PER CURIAM.                    *Venire de novo.*