E. D. SCULL, et als., v. W. D. PRUDEN, et als.[*]

*Deed—Description of Land in—Boundary.*

1. Where land conveyed by a deed was described as "The Mount Pleasant Fishery, with the land attached to the same, supposed to be one thousand yards in length, bounded by the brink or brow of the hill on one side and by the river on the other, from one end of the beach to the other"; *Held*, only that part of the beach known as the "Mount Pleasant Fishery," and the land necessary and convenient for using it passed, there being no certain beginning point.

2. The name of a place may serve to identify it, as well as adjoining lands or water courses.

3. Where the subject-matter of a conveyance is completely identified by its name, by its localities and by other certain marks of description, the addition of another particular which does not apply to it, will be rejected as surplusage.

4. Natural objects and boundaries will govern quantity in a deed. So, if A grants one thousand acres, and describes it by boundaries, all the land within the boundaries will pass, although it contain two thousand acres.

5. In questions of boundary, what are the boundaries, is a question of law; where they are, is question of fact.

(*Dismukes* v. *Wright*, 4 Dev. & Bat., 206; *Proctor* v. *Pool*, 4 Dev., 370; *Belk* v. *Love*, 1 D. & B., 65; *Smith* v. *Low*, 2 Ired., 457; *Reddick* v. *Leggat*, 3 Murph., 539, cited and approved).

This was a CIVIL ACTION for possession of land, tried at the Fall Term, 1883, of HERTFORD Superior Court, before *Avery, Judge,* and a jury.

---

[*]SMITH, C. J., did not sit on the hearing of this case.

The plaintiff claimed the land in controversy under a deed made to one Stephen Smith by Thomas B. Sharp, which contained the following description of the land conveyed, to-wit: "The Mount Pleasant Fishery," with the land attached to the same, supposed to be one thousand yards in length, bounded by the brink or brow of the hill on one side and the river on the other, from one end of the beach to the other.

It was admitted that the title was out of the State, and that the plaintiffs were the owners of and entitled to the possession of all the land embraced within the above recited description; but it was insisted by the defendants that the *locus in quo* was not embraced therein.

It was in evidence that Simon's Mill Creek and Nowell's Mill Creek emptied into Chowan River from the west. That the distance from one of said creeks to the other was 1,299 yards; that from Nowell's Mill Creek up the river towards Simon's Mill Creek for a distance of thirty-three yards was a marsh extending to the water's edge. That at the upper end of said marsh was a hill or ridge which extended up the river to within about five yards of Simon's Mill Creek. That the distance between the river and said hill or ridge varied from three or four feet to one hundred yards in width. That from the lower end of said hill or ridge to the upper end of the *locus in quo* was 990½ yards. That the *locus in quo* or wharf was about 270 yards below Simon's Mill Creek.

There was evidence tending to show that there was continuous beach from about thirty-three yards above Nowell's Mill Creek to about thirty yards below Simon's Mill Creek, and that one part of it was about as well adapted to the purpose of fishing as the other; only about 300 yards of the beach was actually used for landing the seine by those who operated the "Mount Pleasant Fishery," and the upper windlass of the fishery did not extend up the river as far as the *locus in quo* or Mount Pleasant Wharf.

There was evidence tending to show that from the beginning of the bluff thirty-three feet above Nowell's Creek at the marsh,

up to 265 feet above the wharf and in thirty feet of Simon's Mill Creek, there was a continuous bluff or bank and no marsh. That the bluff and bank varied greatly in its distance from the water's edge. That from the beginning of the same near Nowell's Creek up to about the lower windlass of the Mount Pleasant Fishery the water at high tide beat against the bluff or bank for forty or fifty yards. At that point it begins to recede to about what is actually used as a fishery and then again gradually approaches the water, to a point about ten feet above the upper windlass and 200 or 250 yards below the *locus in quo*, at which point the bank approaches so closely to the water, that at high tide it beats against its base, and continues thus close to it, till it reaches Simon's Creek, except at the *locus in quo*, where a narrow ravine or gulch makes out from the river of about twenty-five yards in width. That between the points near the upper and lower windlass above named a natural beach seems to be formed, above and below which, respectively, a seine could only be fished, if at all, at great cost and by cutting away the bank and building wharves. That the river-shore is not generally called beach, except when it is used as a fishery, when it is so called.

It was admitted that if the land claimed was not covered by the description in the deed, it belongs to the defendants.

The plaintiffs asked in writing the following instructions, to-wit:

1st. That the brink or brow of the hill, as described by the witness, on the one side, and the Chowan River on the other side, and the end of the beach lying between said river and said hill, are the boundaries of the land conveyed to Sophia Smith by Thomas B. Sharp by the deed offered in evidence by the plaintiffs.

2. That if the jury is satisfied from the evidence that the beach described by the witness begins at the marsh adjacent to Simon's Creek, and extends down the river to the marsh at Nowell's Creek, then the plaintiffs are entitled to recover the lands described in the pleadings.

3. That if the jury is satisfied that the beach described by the witness begins at the mouth of Simon's creek and ends at the mouth of Nowell's creek, the plaintiffs are entitled to recover the *locus in quo.*

4. That in questions of boundary the distance called for by the deed must prevail unless there be some other description less liable to mistake to control it—as where the distance called for was one thousand yards in length from end to end, and the premises described as at the Mount Pleasant Fishery, the line must continue to the end of the one thousand yards, although it goes beyond the Mount Pleasant Fishery.

The Court refused to give any of the said instructions, but instructed the jury as follows, to-wit:

The plaintiffs, bringing an action to recover possession, must recover, if at all, upon the strength of their own title, and, therefore, the burden is upon them to show, by a preponderance of testimony, that the boundaries set forth in their deeds cover and include the defendants' possession. The Court, as to the calls in the deed from T. B. Sharp to Sophia Smith, which is the description relied upon by the plaintiffs, held,

"(1) That the description of length of plaintiffs' line, supposed to be one thousand yards, is not sufficiently definite to guide the jury in ascertaining the lines of the plaintiffs, because there is no certain point ascertained for the beginning or end of the line, and the distance is not fixed at exactly one thousand yards;

(2) That the plaintiffs cannot hold or recover any land, except so much of the beach or shore as was actually used for the purpose of fishing, and extending out from the river to the brink or brow of the bluff or hill opposite to that portion of the beach used as a fishery;

(3) That the description in the plaintiffs' deed is upon its face ambiguous, and unless the plaintiffs have shown, by parol testimony, where the lines of their deed run, and also that they include the possession of the defendants at the wharf, the plaintiffs cannot recover;

(4) That if the plaintiffs have satisfied you, by a preponderance of testimony, that the wharf would be included in a boundary ascertained by running a line from the highest point on the shore or margin of the river actually used as a fishery, down the river to the lowest point actually used as a fishery, and from the point last named to the brow of the hill opposite the point of beginning, and thence to the beginning, the plaintiff must recover, and not otherwise."

The plaintiffs, in deference to the opinion of the Court thus expressed, submitted to a non-suit, and appealed, and assigned the following errors :

1. In refusing to give each of the instructions asked ;

2. In the instructions as given.

*Mr. R. B. Peebles*, for plaintiffs.
*Messrs. Day & Zollicoffer and Winborne & Bro.*, for defendants.

ASHE, J. (after stating the facts).   The *locus in quo* is a wharf on the shore of the Chowan river, and the question presented by the record is whether the description in a deed, executed by Thomas B. Sharp to Sophia Smith, under which the plaintiffs claim, covers the wharf.

This involves a construction of the said deed.   The subject-matter of the conveyance is described in the deed as follows : "The Mount Pleasant Fishery, with the land attached to the same, supposed to be one thousand yards in length, bounded by the brink or brow of the hill on one side, and the river on the other, from one end of the beach to the other."

There were two creeks emptying into the river above and below the place used for a fishery and known by the name of the "Mount Pleasant Fishery," about twelve hundred yards apart, at a point some thirty-three yards above the lower creek called Nowell's.   At the upper edge of a marsh making into the river, there was a bluff or ridge which widened out as it extended up the river to the width of one hundred yards, leaving a space used

as the fishery about three hundred yards in length, and known as the " Mount Pleasant Fishery." A short distance above the upper end of this space, the ridge or hill approached within three or four feet of the river and continued along to the water's edge up to within five feet of Simon's creek, except at a point about two hundred and fifty yards above the place used for a fishery, where there was a ravine breaking into the river, at which there was a wharf. The distance from the upper edge of the marsh above Nowell's creek was 966½ yards.

The wharf is the *locus in quo.* The plaintiffs contend that the deed under which they claim by its description covers the wharf, and that the distance called for in the deed is the controlling specification.

The defendants insist that, the proper construction of the deed is, that only so much of the beach as was actually used as a fishery with the land lying between that and the ridge, is all that was conveyed by the deed, and it did not cover the *locus in quo.*

In questions of boundary, what are the boundaries of a tract of land is a question for the Court; where are the boundaries is a question for the jury; and in the construction of deeds, the first rule is, that the intention of the parties is, if possible, to be supported; and the second rule is, that this intention is to be ascertained by the deed itself, that is, from all the parts of it taken together. *Dismukes* v. *Wright,* 4 Dev. and Bat. 206 ; *Proctor* v. *Pool,* 4 Dev. 370.

In reading the description of the deed from Sharp to Smith, we think it is manifest that the intention of parties was to convey that part of the beach of the Chowan river which was known as the " Mount Pleasant Fishery," and actually used as a fishery, *with the land attached,* which was necessary and convenient for operating the fishery—that is, not only a place for landing the seine but, as an appurtenance thereto, a place for drying the seine after drawing. Hence the description of the " Mount Pleasant Fishery," with the land attached, bounded by a bluff or hill and the river. The name of the fishery, the natural boundaries of

the bluff and the river fully ascertain the *corpus*. Nothing more was required to identify and ascertain the subject matter of the grant. The additional specification of the length of the beach, could not affect an identification so completely established.

When the subject matter of a conveyance is completely identified, by its *name*, by its localities, and by certain other marks of description, the addition of another particular which does not apply to it will be rejected as having been inserted through misapprehension or inadvertance. *Belk* v. *Love*, 1 D. and B. 65.

Here the name of the subject-matter of the conveyance is given, to-wit, the "Mount Pleasant Fishery," with the further marks of description, the bluff or hill on one side, and the river on the other. "The name of a place," says Chief Justice Ruffin in *Smith* v. *Low*, 2 Ired., 457, "like that of a man, may and does serve to identify it to the apprehension of more persons than a description by *coterminous* lands and water-courses, and with equal certainty. For example, 'Mount Vernon,' the late residence of General Washington, is better known by that name than by a description of it as situated on the Potomac river and adjoining the lands of A, B and C." And in *Reddick* v. *Leggat*, 3 Mur., 539, it was said by Chief Justice Henderson, "when the thing referred to *has no particular name*, and there are superadded to the general description specifications, or localities, all those specifications or localities must concur to point out the object, otherwise it does not point out the thing intended; as if I grant all my lands in Dale, which I purchased of J. S. and which are in the tenure of J. N., all these specifications must concur; otherwise nothing is described. But if I grant White Acre, which I purchased of J. S., and which descends to me from my father, White Acre will pass, although I purchased it of J. N. and not from J. S., and although it descends to me from my mother and not my father." And in the same case, by way of illustration, the learned judge says, "if one grants one thousand acres and no more, bounded as follows, &c., and two thousand acres are included in the boundaries, the two thousand acres will pass, as

the butts and bounds are more certain than quantity." These authorities are cited to show the controlling effect of the *name of the place* in the description of a deed. In the deed under consideration the name of the place is given, to-wit, the "Mount Pleasant Fishery." What is a fishery? "It is a place prepared for catching fish with nets or hooks."

This term is commonly applied to the place of drawing a seine or net. 1 Bouvier's Law Dictionary, 528. This fishery then, as described by its name, was that part of the beach of the river prepared and used for drawing the seine. We do not see how the description could apply to a part of the beach never used for such a purpose, and which could only be used for fishing "at great cost and by cutting away the bank and building wharves." We concur with His Honor in holding that the description of length of plaintiffs' line, supposed to be one thousand yards, is not sufficiently definite to guide the jury in ascertaining the lines of the plaintiffs, because there is no certain point ascertained for the beginning and end of the line, and the distance is not fixed with exactness. A description so indefinite must always yield to others that are less uncertain. The description is by no means relieved from its uncertainty, as contended by plaintiffs' counsel, by the superadded words "from one end of the beach to the other," for the case states that "the river shore is not generally called *beach*, except when it is used as a fishery, when it is so called."

Our opinion is His Honor has put a proper construction upon the deed, and that there was no error in giving or refusing instructions.

No error. Affirmed.