PERKINS *v.* BRINKLEY.

(Filed November 10, 1903.)

1. EVIDENCE—*Maps—Deeds—Boundaries.*

Where no evidence is offered as to when a map found among the grantor's books was made, or that it· was in existence and referred to by the parties at the execution of the deed, it is inadmissible to show the land included in the deed.

2. EVIDENCE—*Agency—Declarations—Boundaries.*

Where a husband is in possession of land as agent of his wife, his declarations to strangers in regard to the boundaries of her land are not admissible against her.

3. EVIDENCE—*Declarations—Deeds—Boundaries.*

Conversations with the grantor in a trust deed, without evidence that they were had with or were known to the trustee or *cestui que trust,* or that the deed was made with reference thereto, are inadmissible in a suit involving the construction of the deed.

4. EVIDENCE—*Trusts—Boundaries.*

In a suit by a *cestui que trust* for rents due from the trustee, testimony as to a settlement of the boundaries between plaintiff and grantor's children is inadmissible where defendant had taken possession of and rented the land.

ACTION by Mary E. Perkins against Abram Brinkley, heard by Judge *Frederick Moore* and a jury, at June Term, 1903, of the Superior Court of WARREN County. From a judgment for the plaintiff the defendant appealed.

*Pittman & Kerr,* for the plaintiff.

*Thomas N. Hill, Day & Bell* and *Tasker Polk,* for the defendant.

CONNOR, J.   This is the defendant's appeal.   It appears from the record that upon the death of Dr. W. M. Perkins,

January 2, 1901, the defendant collected the rents from the land conveyed to him in trust. He testified: "I collected the rents for 1901 and 1902 and paid them to the plaintiff and her agents, Egerton and Newell; 1901 rents paid her was $102.50, less the taxes." Upon his cross-examination he said: "I simply paid what I got from the north side of the road; have never paid her anything from the south side." The case on appeal states that "The plaintiff contended that the contract or marriage settlement embraces all the B. C. Edmunds land of Dr. Perkins on both sides of the road covered by the description in that instrument, and that there was a balance of $97.50 due by the defendant on account of rents for 1901. The defendant contended that only five hundred acres on the north side of the road were embraced, and that nothing was due." His Honor charged the jury that "If they believed the evidence the description included the land on both sides of the road, and that they must take that into consideration in estimating its rental value." To this instruction the defendant excepted. The land conveyed to the defendant is described as "one tract known as the B. C. Edmunds land, containing 500 acres, including the dwelling and other houses thereon, said tract of land adjoining the lands of William Powell, William Liles, W. M. Perkins and others." W. C. Powell testified that he knew the Edmunds land. "All the Edmunds land is joined together, except that a road runs through it; it is bounded as described in the complaint; my land is on the north side; so is William Liles's." Abram Brinkley, the defendant, testified that the "description in the contract could embrace the Edmunds land on both sides of the road; I think it adjoined Moore's land, January 25, 1873; Moore's land was on the south side of the road." It was shown that the portion of the B. C. Edmunds land on the north side of the road contained 552 acres, and on the south side 103 acres. F. H. Taylor, for the defendant, testified that

"the description in the contract embraces 552 acres on the north side of the road; same description covers the entire Edmunds tract; by deeds there are 552 acres on the north side and 103 acres on the south side of the road." For the purpose of showing that only the land on the south side was conveyed by deed, the defendant offered to put in evidence a map found among the papers of Dr. W. M. Perkins. The map was a drawing representing a tract of land; in the center were written, in the handwriting of Dr. Perkins, the words "containing 500 acres conveyed to Abe Brinkley as trustee, as annuity for M. E. Cheek during her life." There are also, in the same handwriting around the lines of the map, entries describing the lines. The defendant testified in regard to this paper: "I got this paper as executor; found it in one of Dr. Perkins' books. * * * I qualified as executor; handwriting on this paper is Dr. Perkins'. It was lying in one of his account books. There were other loose papers lying in the book. Don't know what other papers were in the book. * * * Book was valuable. It was an account book where Dr. Perkins kept medical and other accounts against people." The Court refused to admit the paper and defendant excepted. In the absence of any evidence as to when the map was made, or that it was known to the defendant or Mrs. Perkins, or that it was in existence and referred to by the parties at the time of the execution of the deed, his Honor correctly excluded it. In *Hall v. Eaton,* 139 Mass., 217, the defendant offered to introduce a map for the purpose of explaining a latent ambiguity in a deed. The Court in passing upon an exception to the refusal of the Court to permit it says: "This plan is not referred to in the deed and was not seen by the purchasers. The only effect of this evidence would be to show that the grantor knew that the plat did not correspond with the one on the plan, and did not inform the

grantees. *Webb v. Hall,* 18 N. C., 278 (281 near bottom of page.)" His Honor properly excluded the map.

The plaintiff offered to show by witnesses that they had conversations with Dr. Perkins after the execution of the deed, for the purpose of showing that the 500 acres was the only land embraced in the marriage contract. Upon the objection of the plaintiff the testimony was excluded and the defendant excepted. It was shown that Dr. Perkins rented out the land, and as we construe the testimony he was the agent of his wife. The defendant argues that being in possession his declarations are competent. The general rule is well settled that the declarations of a vendor in possession of land are competent for the purpose of explaining, qualifying or characterizing his possession. This principle cannot be extended to the declarations of an agent in possession in disparagement of the title or boundaries of his principal. Dr. Perkins' possession was his wife's possession, and his declarations in regard to the boundaries of her land, made to a stranger, cannot be competent against her. If made to Brinkley, her trustee, and acted upon by him in renting the land, a different question would be presented. His Honor correctly excluded the testimony. The defendant also offered evidence tending to show conversations with Dr. Perkins prior to the execution of the deed. There is no suggestions that these conversations were had with, or known to, either the defendant or the *cestui que trust,* or that the deed was made with any reference to such conversations. We think the evidence was properly excluded.

The testimony in regard to a settlement of the boundaries made between the plaintiff and the children of Dr. Perkins was properly excluded. The defendant having taken possession and rented the land after Dr. Perkins' death, should have accounted to the plaintiff for all of the rents received.

We concur with his Honor in the opinion that the deed, in

the light of the evidence, included the B. C. Edmunds land on both sides of the road.

The judgment must be affirmed.

MONTGOMERY, J., did not sit on the hearing of this case.