### F. T. GATES v. J. G. McCORMICK ET AL.

(Filed 11 December, 1918.)

**1. Evidence—Maps—Lands—Title.**

A map of the lands in dispute may not be received in evidence against an adverse claimant, though made by the county surveyor, when there is no evidence that the one in his chain of title, for whom it was expressed upon its face to have been made had it in his possession, or that it was made at his instance, or that he had received it as authoritative or correct; the statement thereon, standing alone, being inadmissible as hearsay.

**2. Same—Ancient Documents.**

A map or document may not be received in evidence solely because it has the appearance of being old and faded, for it must have been in the possession of one in the chain of title of the adverse claimant and in recognition of its correctness, or it must be produced from a proper or natural custody, under circumstances that will tend to free it from suspicion or fraud or invalidity. *Nicholson v. Lumber Co.*, 156 N. C., 59, cited and applied.

WALKER, J., dissents.

ACTION, tried before *Harding, J.,* at June Term, 1918, of SCOTLAND, upon this issue:

Is plaintiff the owner of the lands described in complaint, or any part thereof; if so, what part? Answer: "No."

From the judgment rendered plaintiff appealed.

*G. B. Patterson, Russell & Weatherspoon, and U. L. Spence for plaintiff.*

*Cox & Dunn, C. W. Tillett, McLean, Varser & McLean for defendants.*

BROWN, J. Plaintiff claimed title under the McMillan grants and introduced evidence tending to locate said grants on the land in contro-

versy and connected himself with the grantee by mesne conveyances. The claim of title by adverse possession under color seems not to have been supported and to have been abandoned, as there is no reference to it in plaintiff's brief. The defendants claimed title under two senior grants to John Gilchrist, one for 500 acres and the other for 448 acres. The controversy appears to have been as to the beginning corner of the 500-acre grant. It seems to have been admitted that if the beginning corner of the 500-acre Gilchrist grant is located at the point J on the map, that defendant's grants cover the *locus in quo.* This grant begins "at a stake in the head of the north prong of Hills Creek, two pine pointers." The plaintiff contended that the head of the north prong of the creek was at A. This would locate the Gilchrist grants off the *locus in quo.* The entire controversy seems to be largely a question of fact in locating the beginning of the 500-acre Gilchrist grant, and the jury appear to have adopted defendant's contention.

Exhibit B, offered in evidence by plaintiff and excluded, is important. This purports on its face to be a survey of the land and reads as follows:

"Surveyed for John Gilchrist on 3 September, 1851, 640 acres of land in Richmond County on the west side of Drowning Creek and east of the Juniper, beginning at the third corner of his 500-acre tract, and runs with its third line west 51 chains and 25 links to its fourth corner; thence with its fourth line south 18 chains to a stake two pine pointers in said line, then west 40 chains to a stake two pine pointers; thence north 60 west 43 chains to a small pine on the west side of the Juniper about 20 chains below the main head; thence north 40 chains to a stake, two pine pointers; thence east 129 chains and 25 links to a pine on the south of Little Muddy Creek; thence south 43 chains to the beginning. Entered 21 April, 1846. No. warrant, 2280.

JAMES GILCHRIST.                    THOMAS GIBSON, *Surveyor.*
DANIEL W. JOHNSON.

It is stated in the record that the paper appeared to be faded and very old and in handwriting of Thomas Gibson.

It appears that this map was found among the papers of W. H. McLaurin, deceased, under whom defendants do not claim. In fact, he appears to have had some interest adverse to them.

We are of the opinion that the map, or survey, was properly excluded. The map and certificate would have been competent against defendants if it had been shown that the map was made at the instance of John Gilchrist and was accepted and adopted by him while he owned the land; but as none of these facts were shown, the map was properly rejected.

The rule is that a map is evidence against a party and those claiming

41—176

under such party, provided it can be shown that the map was made at the instance of such party and was accepted by him while he was claimant of the land.

This ruling is fully supported by *Webb v. Hall,* 18 N. C., 278, where the map offered in evidence was admitted upon the ground that it was made at the instance of Beazley, who was then the owner of the land. *Chief Justice Ruffin* says: "The map would be evidence against him of the extent of his estate or claim, not upon the ground that it was the work of the county surveyor or the plan subsequently drawn by the original surveyor, upon whose certificates the grant issued, but because it was Beazley's own act. The plat of 1822, we think, was properly rejected because there was no evidence at whose instance it was made, nor from whose custody the paper came."

There is no evidence that the map in question was made at the request of John Gilchrist. The mere recital of Gibson in the paper that it was made for John Gilchrist cannot be accepted as evidence any more than any other hearsay testimony. The fact that a map is made by a county surveyor is not sufficient to permit it to be introduced in evidence, but it must be shown to have been made at the instance of the party for whom it was made, so as to become his act as well as that of the surveyor. There is no evidence that the Gibson map or survey was ever in the possession of John Gilchrist or that he ever accepted or recognized it.

The ruling of the Court in *White v. Hall* seems to be supported by the subsequent cases of *Burnett v. Thompson,* 35 N. C., 379; *Perkins v. Brinkley,* 133 N. C., 350; *Hall v. Eaton,* 139 Mass., 217; *Plummer v. Baskerville,* 36 N. C., 252.

Nor do we think that Exhibit B could be admitted without proof as an ancient document. It has not been proven to have been found among the papers of John Gilchrist or in any other proper or natural custody. *Nicholson v. Lumber Co.,* 156 N. C., 59.

In this case, *Justice Hoke* clearly states the rule governing the admission of such documents: "It is well established that ancient documents—that is, documents relevant to the inquiry and bearing date or purporting to bear date at or before a period of thirty years prior to the time the same is offered in evidence—prove themselves—that is, they are admissible in evidence without ordinary requirements as to proof of execution or as to handwriting—the recognized limitations being that they should be produced from proper or a natural custody and be free from suspicious circumstances indicative of fraud or invalidity."

There are a number of assignments of error in the record, all of which we have considered and think they are without merit and need not be discussed.

Upon a review of the entire record, we find

No error.

WALKER, J., dissents as to survey and plat of Thomas Gibson, deceased, former county surveyor (Exhibit B), being of opinion that it is competent as a declaration of a deceased person, who was disinterested, as to boundary, the circumstances of its being found in the papers of W. H. McLaurin not affecting its competency, but only its weight as evidence.