The plaintiff alleged ownership and possession of a tract of land in Flea Hill Township, Cumberland County, describing the same by metes and bounds, giving his last call and the point from which it runs, as follows: "A small short-leaf pine, N. A. Williams' beginning corner of a 500-acre survey; thence as N. A. Williams' line of said 500-acre survey, with Great Creek, to the beginning."
The defendant admitted plaintiff's title and possession of the land, described by plaintiff, but "denied that plaintiff's line extends beyond the line of low bushes on the west side of Great Creek." *Page 335 
[EDITORS' NOTE: THE MAP IS ELECTRONICALLY NON-TRANSFERRABLE.], SEE 189 N.C. 335.] *Page 336 
The allegations of trespass and the denial of the same, became immaterial at the trial, and the court submitted, without exception, the following issue:
"Is the true dividing line between plaintiff and defendant the line marked A, B, C, D or the line marked, 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14?"
These lines as indicated by letters and figures indicate the locations of the respective contentions of the parties, on the map filed in this case by the surveyor appointed by the court.
It further appears that the 500 acre N. A. Williams survey is contained in a grant to Nathan A. Williams, dated 6 February, 1880, and the line in this survey called for in plaintiff's allegations and chain of title is as follows: "Thence down the edge of Great Creek as the low bushes goes to the beginning." The grant called for a plot, but this plot was not in evidence at the trial.
The jury found with the plaintiff, that the true dividing line is as indicated on the map by the letters, "A, B, C, D."
It appears from the record in this case, as well as from the oral argument, that there is no question of title involved in this controversy. The defendant expressly admits, in his answer, the first allegation of the complaint, which avers title and possession, subject only to the location of the "line of low bushes on the west side of Great Creek." Each muniment in the paper title of the respective parties calls for the same line, to wit: "The line in the Williams grant, or 500 acre survey, which runs down the edge of Great Creek as the `low bushes goes,' to the beginning."
Since the point A, in plaintiff's contentions, is the same as 1, in the defendant's contentions, the location of this point is taken as admitted, and this is the beginning point of the line in controversy. Hence, the location of the dividing line is the sole province of the jury.
What the line is, is necessarily a question of law. Tatem v. Paine,11 N.C. 64; Burnett v. Thompson, 35 N.C. 379; Marshall v. Fisher,46 N.C. 112; Hurley v. Morgan, 18 N.C. 426; Waters v. Simmons,52 N.C. 542; Osborne v. Johnston, 65 N.C. 22; Clark v. Wagoner, 70 N.C. 706;Scull v. Pruden, 92 N.C. 168; Johnson v. Ray, 72 N.C. 273; Davidson v.Shuler, 119 N.C. 584; Jones v. Bunker, 83 N.C. 324; Redmond v. Stepp,100 N.C. 213; Peebles v. Graham, 128 N.C. 218; Echerd v. Johnson,126 N.C. 409; Rowe v. Lumber Co., *Page 337 138 N.C. 465; Sherrod v. Battle, 154 N.C. 345; Gudger v. White,141 N.C. 507; Lumber Co. v. Bernhardt, 162 N.C. 460; Power Co. v. Savage,170 N.C. 625; Brooks v. Woodruff, 185 N.C. 288.
Where the line is, is a question of fact. Tatem v. Paine, 11 N.C. 64;Burnett v. Thompson, 35 N.C. 379; Marshall v. Fisher, 46 N.C. 112;Hurley v. Morgan, 18 N.C. 426; Waters v. Simmons, 52 N.C. 542; Osbornev. Johnston, 65 N.C. 22; Clark v. Wagoner, 70 N.C. 706; Schull v.Pruden, 92 N.C. 168; Davidson v. Shuler, 119 N.C. 584; Jones v. Bunker,83 N.C. 324; Redmond v. Stepp, 100 N.C. 213; Peebles v. Graham,128 N.C. 218; Echerd v. Johnson, 126 N.C. 409; Rowe v. Lumber Co.,138 N.C. 465; Sherrod v. Battle, 154 N.C. 345; Gudger v. White,141 N.C. 507; Lumber Co. v. Bernhardt, 162 N.C. 460; Power Co. v. Savage,170 N.C. 625; Brooks v. Woodruff, 185 N.C. 288.
The issue submitted is only intended, as it appears from the record, to determine the true location of the dividing line between the Williams survey and the plaintiff's lands. The controversy waged around this one question. Several exceptions were taken by the defendant to the admission of evidence during the trial, and several of these appear to contain hearsay evidence relating to plaintiff's title to the lands; this was apparently harmless, because the question of title was not involved, and they may not occur again, hence we will not discuss them.
The trial court charged the jury as follows:
"If you find, from the evidence, that the defendant's grant goes to that line, and that he entered into possession of any part of the land covered by the grant, then he would be deemed in law to be in lawful possession of it all, as covered by the grant, up to the line marked from 1 to 14, inclusive, and you would answer this issue, line 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13 and 14; unless you so find, further, that the plaintiff and those under whom he claims, have been in the adverse possession for 20 years before bringing this action of the disputed area, under known and visible lines and boundaries that is, up to a known line and boundary, as alleged and contended for by the plaintiff, and shown on the map by the letters, A, B, C, and D." This same view is presented several times in the charge.
The latter part of this quoted instruction, as to adverse possession by plaintiff and those under whom he claims, appears to be error. The controversy was solely as to the true location of the dividing line, which, according to admissions of the parties, must be located wherever the line described as follows: "thence down the edge of Great Creek as the low bushes goes, to the beginning," is located.
This call necessarily relates to the date of the survey contained in the grant, to N. A. Williams, the defendant. The entry on which this *Page 338 
grant was issued, is dated 2 April, 1878, and the grant appears of date 6 February, 1880; consequently, the inquiry is as to the true location of this line, as it was on these dates.
The physical changes at this place that have occurred since the dates of the survey and grant do not enter into this call in the description in the grant. The call does not float with the changes in the waters, nor shift with the growth of bushes or trees incidental to later drainage or floods.
In Lynch v. Allen, 20 N.C. 62, Gaston, J., says: "But it does not follow that because the river had deserted the bed in which it flowed when the deed was executed that the boundary of the land of the lessor of the plaintiff has shifted with it." Wilhelm v. Burleyson, 106 N.C. 382.
The instant case cannot involve any question of accretion, or avulsion, and the line is as the "low bushes goes," to be located by the jury at the dates of the entry and grant called for by plaintiff's allegations.
If this line is correctly located along the line of figures, 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, and 14, then the plaintiff's allegation, as well as his paper title, fixes such line as the true dividing line, and he does not allege ownership to the east of this line. If, however, the line indicated on the map with the letters, A, B, C, and D, is the correct location of the true dividing line, then the plaintiff owns up to this line, according to the admission in defendant's answer. The adverse possession and the use of the lands in dispute, are both competent facts, material upon the question of the location of the dividing line, and if the instruction had allowed the same to have been considered only for this purpose, it would have been correct. When there is no question of title, adverse possession cannot be so used, or as set out in other parts of the charge. These instructions contain a correct statement of the law, as to constructive possession, and, also, as to adverse possession ripening title without color, in the abstract, but to allow adverse possession to extend the plaintiff's title, in the instant case, beyond the allegations in his complaint, constitutes error. Upon these instructions, the jury could have located the western boundary of the Williams 500 acre survey, where the defendant claimed its true location is, and, nevertheless, they could have found the dividing line to be located as claimed by the plaintiff, if they found that the plaintiff had had adverse possession of the disputed area for the requisite length of time, although, such a finding would have located the disputed area east of the plaintiff's eastern boundary set out in his complaint.
If the plaintiff desires to set up title to any part of the lands in dispute, which may be east of the location of the western line of the Williams survey, as finally located by the jury, it will be necessary *Page 339 
for him to ask for and obtain permission of the trial court to amend his complaint accordingly. If he does so amend, he can then use adverse possession, or any other mode of proving title, that the facts will sustain; but as the pleadings are now constituted, the issue of title does not arise.
Issues can arise only upon the pleadings. C. S., 580. Fortescue v.Crawford, 105 N.C. 30; Wright v. Cain, 93 N.C. 296; Patton v. R. R.,96 N.C. 456.
Since there is no allegation in the complaint, which can suggest or support a claim, on the part of the plaintiff, that his eastern line is located east of the defendant's western line, as set out in the Williams 500-acre survey, then no issue could be submitted to the jury embracing such a claim, and the jury ought not to be instructed so as to permit them to locate the plaintiff's eastern line beyond the defendant's western line. In Miller v. Miller, 89 N.C. 209, it was held error to submit an issue not raised upon the pleadings, so in the instant case, it is equally erroneous to allow the issue to include land not claimed in the complaint.
The defendant presents by his exceptions a challenge to the correctness of the denial of his motions for judgment as of nonsuit. We do not think that there is any merit in this contention. There appears to be evidence tending to show that the true location of the line of low bushes along Great Creek, is where the plaintiff claimed, and other evidence tending to show that this line is located where the defendant claimed. The question of title is not involved and the burden is upon the plaintiff to show that the true location of this dividing line is where he claims it to be, and, in no event, upon this evidence could a nonsuit be properly entered.
In Rhodes v. Ange, 173 N.C. 25, the Court discusses controversies of this kind with much clearness. This latter case was instituted to procession land and to determine the dividing line between the lands of the parties. In the instant case, the action was originally begun in trespass, and the trespass was denied and the title admitted and the issue joined only as to the location of the dividing line between the parties. Hence, the trial runs itself into what is practically a processioning proceeding. A failure to note the distinction between a proceeding where the location of a line is solely involved, and one where the title is also involved has given rise to much of the confusion in this regard. In Rhodes v. Ange,supra, the Court says: "Our processioning act is similar in some respects to the `writ of perambulation' at common law, which was sued out by consent of both parties, when they were in doubt as to the bounds of their respective estates, and was directed to the sheriff, who was commanded to make the `perambulation' with a jury, and to set the bounds and limits between them in certainty. There *Page 340 
it was done by the consent of the parties, and when there was no dispute as to the title and none as to the right to occupy the adjoining tenements, while with us either of the adjoining proprietors, where a dispute as to the true dividing boundary has arisen, is entitled to have the land processioned, without the other's consent." Or he may institute his action, alleging title, as in the instant case, and if the answer admits the title, but joins issue upon the location of the dividing line only, the trial is conducted, then, in all practical aspects, in the same manner as in processioning proceedings in term time.
In Jackson v. Williams, 152 N.C. 203, the Court intimates that a technical motion for an involuntary nonsuit is not applicable to such a trial, when the only issue is as to the location of the dividing line. Without deciding whether a motion for an involuntary nonsuit in these cases will lie, we suggest that the better practice is to submit the issue to the jury, if any pertinent evidence is offered, but if the plaintiff offers no evidence, whatever, a verdict could be directed properly in favor of the defendant.
It is apparent that, in the old common-law proceeding, under the writ of perambulation, the line would be located because the jury, with the sheriff, went upon the premises and located it from such evidence, as appealed to their own senses. A failure to come to a decision was never expected, a determinative result was a practical certainty.
Inasmuch as this case goes back for a new trial, we suggest that the issue be framed as follows: "Is the dividing line between the plaintiff and the defendant located as the line marked on the map, as A, B, C, D, or as the line marked on the map as 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, and 14?"
For the errors in the charge, as pointed out herein, we are constrained to hold that there must be a
New trial.