STEPHEN HENLEY v. J. C. WILSON and others.

*Deed--Mistake--Action of Trespass--Adverse Possession--Evidence--Pleading.*

1. Where A made a deed to B conveying a life estate but intending it to be deed in fee simple ; *Held*, that the plaintiff claiming under B (after B's death) cannot maintain an action for a trespass on the land, as equitable owner in possession, under C. C. P. § 55.

2. In such case the plaintiff has only a right in equity to have A converted into a trustee and decreed to execute a deed in fee.

3. The case is not varied by the fact that, pending the action, A executed a deed to plaintiff in fee: such deed takes effect only from its delivery and A has not the power, nor has a Court of Equity the power, to make such deed relate back to the time of the execution of the original deed to B.

4. Where one having a life estate in land executes a deed in fee for the same, the adverse possession of the grantee under such deed begins from the death of the life tenant.

5 A plaintiff claiming title under an adverse possession for seven years under color of title, cannot recover in an action for damages for trespass on the land, where the complaint fails to set out precise dates.

6 Where a complaint is general in its allegations, loose in it statements, and omits to give precise dates, no intendment can be made in favor of the pleader.

7. Where A made a deed to B in 1867, (but dated it 1848,) in lieu of a deed made to B in 1848, which had been burned ; *Held*, in an action against B for trespass, that the testimony of A as to the dates and the boundaries set out in the burnt deed, was competent.

8. The remedy under the "Mill-dam Act," (Bat. Rev. ch. 72, §§ 13 *et seq.*) does not apply to an action for damages for a trespass committed on the plaintiff's land.

CIVIL ACTION for Damages tried at Spring Term, 1877, of CHATHAM Superior Court, before *Cox, J.*

The plaintiff was the owner of valuable mills on the west bank of Haw River, erected for a grist mill and wool-carding machine, &c. The defendants were the owners of a saw

mill situated on the east bank of the river, above the plaintiff's mills, which were run by water power, the water being conducted by a race formed by two dams. The defendants increased the height of the dams and cut a race across plaintiff's line, thereby interfering with the water power of plaintiff, and for the trespass and the damage resulting therefrom this action was brought.

The plaintiff's title to the land upon which his mills were situated, and the trespasses were alleged to have been committed, was denied by the defendants. Both parties claimed under one H. J. Stone, who conveyed the land on the 9th of November, 1848, to one McClennahan for life. The plaintiff then offered in evidence mesne conveyances from McClennahan to himself, which were admitted to be regular; one of these conveyances being a fee simple deed from McClennahan to Mary Taylor, dated the 24th of May, 1852; and it was proved that McClennahan died in 1859. After the commencement of this action, and in furtherance of an understanding between Stone and McClennahan to cure a mistake in the first deed, Stone executed a deed to the plaintiff conveying said land in fee, and reciting in the deed that he intended to convey a like quantity of interest to McClennahan in the first instance. The plaintiff, and those under whom he claimed, were in possession of the land from the 9th of November, 1848, to the present time, claiming to be fee-simple owners thereof. Stone executed a deed for land adjoining the plaintiff's tract to one Temple, which deed was burnt in Temple's house. And thereupon, at the request of Temple, and before he (Stone) went into bankruptcy in 1867, he executed another deed in lieu of the one burnt, and dated it August 25th, 1848. It was alleged that this was not the date of the original deed, nor was the land described by the same boundaries. Stone testified, among other things, that this deed was made without reference to the McClennahan deed, and was intended to convey the same

land as was embraced in the original deed to Temple, which deed did not call for the river, but for McClennahan's line. But the deed of 1867, which was offered in evidence, called for the river. Temple conveyed to the defendants in 1876, and he testified that the deed of 1867 was the same as that of 1848, in regard to boundaries and date.

The defendants objected to the testimony of Stone, and also to the evidence in regard to the damages sustained, upon the ground that damages, by reason of the erection of the defendants' saw mill, could only be recovered in a special proceeding, and should be assessed by commissioners. The objections were overruled, and under the instructions of His Honor the jury rendered a verdict in favor of the plaintiff. Judgment. Appeal by defendants.

*Messrs. John Manning* and *J. B. Batchelor*, for plaintiff.
*Mr. John M. Moring*, for defendants.

PEARSON, C. J. The pleadings show a degree of caution and secretiveness by resorting to general expressions and the omission of dates, that is not to be commended. We are aware that many gentlemen of the profession adopt this mode of pleading, relying upon the very full power of allowing amendments under C. C. P. We enter our protest against it, as calculated to defeat the object of pleading, which is to give notice of what is expected will be proved at the trial, so as to prevent surprise. This vicious practice would be corrected if the Judges of the Superior Courts, in the exercise of their discretion, would refuse to allow the pleadings to be amended after verdict, so as to make the allegations conform to the facts proved, whenever there is reason to suppose that the vicious mode of pleading was adopted on purpose to embarrass the opposite party. In such cases the Court should refuse to give judgment, and

let the party have the benefit of the verdict and bring an-- other action.

There is no allegation in the complaint of any mistake in the deed of Stone to McClennahan, by which a life estate is conveyed instead of the fee-simple; and unless the plaintiff has made out a case on the legal title, he will be obliged to pay the costs in this Court and have the case remanded, to the end that the pleadings may be amended, if the Judge should deem it to be a proper case in which to allow an amendment after verdict.

The plaintiff's counsel on the argument took the ground that he could maintain the action as equitable owner in pos-- session under the provisions of C. C. P. § 55. That provis-- ion does not apply; for the plaintiff has *no equitable estate* as a purchaser in possession, or other *cestui que trust*, but has only a *right* in *equity* to have Stone converted into a trustee and decreed to execute a deed in fee simple; and the fact that Stone pending the action executed the very deed that he would have been required to execute, does not vary the case; for the deed took effect only from the time of its delivery, and Stone had no power to make it relate back to the time of the execution of the deed to McClennahan. In-- deed a Court of Equity has no such power, and could only have required Stone to do what he has done—namely, exe-- cute a deed in conformity to the intention of the parties, and then have "enforced the right in equity" by a perpet- ual injunction that Stone and those claiming under him should not disturb the title under the deed to McClennahan, on the principle that "equity considers that to be done which ought to have been done."

As to plaintiff's right to recover upon the legal title, we have seen that the deed of Stone executed pending the action does not relate back to the execution of his deed to McClen-- nahan. But the counsel of the plaintiff insists that he had acquired the legal title by seven years adverse possession.

under color of title. The question is, when did the adverse possession begin?—not at the date of the deed of McClenna-han to Mrs. Taylor in 1852, for although the conveyance to her was in fee, she was not exposed to an action during the life of McClennahan, for she had the true title during his life time, and was not liable to an action by Stone or those claiming under him until the death of McClennahan, which as stated in the case, was in 1859. It is not set out at what time in 1859 ; so plaintiff's counsel takes a starting point—January 1st, 1860 , to May 20th, 1861, when the statute of limitations was stopped—one year, four months and twenty days ; from January 1st, 1870, to July 22nd, 1876, when the action was brought—six years, six months and twenty two days ; total—seven years, eleven months and twelve days.

' This calculation which the plaintiff's counsel makes in his brief would do very well, provided the defendant had not entered into possession under the deed of Stone to him, exe-cuted in 1867. But the defendant had . entered and taken possession some time before the commencement of the action. How long before is not set out in the case. It may have been more than one year, eleven months and twelve days. If so, that interrupted the running of the statute of limitations. Here, the plaintiff fails because of the gener-ality of his allegations and the omission to give precise dates ; and in such loose statements, no intendment can be made in favor of the pleader.

The complaint—paragraph 6—sets out " that defendants against the will of plaintiff entered and added three feet to the height of plaintiff's upper dam," &c. No date is given.

And in paragraph 8, " In addition to the injury caused by the increased height of the dam, defendants entered upon said land and cut a race," &c. No date is given.

' In the absence of any allegation or proof to the contrary, we must assume that these trespasses were committed before the plaintiff's title had ripened by seven years adverse pos-

session; and the only question is, were these acts mere temporary trespasses or were they of a continuing nature, so as permanently to interrupt the plaintiff's · adverse possession ?' As to that, there can be no doubt; for the defendants continued to use the dam so increased in height, and the race so cut, for purposes of their own up to the bringing of the action.

As the case goes back, we think it proper to declare our opinion to be, that the reception of the testimony of Stone, as to the fact that the deed to Temple was executed in 1867, and not in *August*, 1848, (as it was dated falsely to overreach the deed to McClennahan in November, 1848, which fact could have been proved by the subscribing witnesses) was admissible. His testimony that the boundaries in the deed made by him to Temple in 1867, differed from the boundaries in the deed alleged to have been burnt—executed after the deed to McClennahan—was also competent for the purpose of having the deed obtained in 1867, reformed. But there is no allegation in the complaint to set up this equity, and indeed the evidence was immaterial. We also declare our opinion to be, that the trespasses complained of being done on the plaintiff's land, as he alleges, do not come under the operation of the Mill-dam Act which applies only to "trespass on the case" for acts done on the defendant's own land to the injury of the plaintiff, by ponding back water, or other like injuries.

This will be certified and the case remanded.

PER CURIAM.                                   *Venire de novo.*