GUDGER v. WHITE.

(Filed May 22, 1906).

*Deeds—Description — Construction — Definiteness — Parol Evidence.*

1. Courts are required to interpret a deed so as to ascertain and effectuate the intention of the parties as gathered from the entire instrument, but it is proper to seek for a rational purpose in the language and provisions of the deed and to construe it consistently with reason and common sense.

2. Where one deed refers to another for a description, the latter is to be taken as if embodied in the deed referring to it, and the premises as therein described will pass under the former.

3. Where only one deed is shown to have been made by R., and that in 1875, a deed from plaintiff to defendant's grantor made in 1898 referring to "a deed having been made to this tract by R., the then owner," is a sufficient reference to R.'s deed, and the description in the first deed must be considered as if it had been inserted in the second, and the description in the two deeds being in substance the same, the deed of 1898 conveyed the land according to natural conditions existing at the time the deed of 1875 was executed, having for one of its boundaries a branch as it then was, and not as the bed of it was changed by a freshet in 1892, the deed of 1898 being read simply as of the date of the deed of 1875.

4. Where the description in a deed closes with a clause which clearly and unequivocally sums up the intention of the parties as to the property conveyed, such clause should have its proper effect upon all the antecedent phrases in the description, and is surely entitled to much weight in determining the true construction of the deed.

5. It is a question for the court to decide as one of law, what was the boundary, and for the jury to determine where it is actually located.

6. A description in a deed "Beginning on a point where the two roads intersect, and runs so as to embrace a front of 44 feet on the Buncombe turnpike road, west of the branch and running back to the mountain, the branch being the southeastern line. Also all the land opposite said lot to the river; giving a frontage of 44 feet; a deed having been made to this last named tract No. 2 by Pinckney Rollins, the then owner; this deed is made to this tract to better perfect the title and is to be a quitclaim deed thereto," is sufficiently definite for the land to be identified under Revisal, section 1605.

ACTION by J. M. Gudger, Jr., against H. A. White, heard by *Judge T. A. McNeill* and a jury, at the October Term, 1905, of the Superior Court of MADISON.

The plaintiff sued for a parcel of land now in the possession of the defendant and designated on the map as A 1, 2, 3, 4, C, B, and back to A, the beginning. He showed title out of the State by a grant issued to John Gray Blount in 1796 for a large body of land, and then introduced a deed from Z. B. Vance to Samuel Shelton and from Shelton to Pinckney Rollins, and then a succession of deeds from Rollins and those claiming under him, connecting the plaintiff with the title of Z. B. Vance. All these conveyances covered the *locus in quo.* There was evidence tending to show that the plaintiff and those under whom he claims had held adverse possession of the land in controversy for 30 years. The plaintiff testified that he had been in possession of the land in dispute, which is covered by the said deeds, continuously since 1895 and built tenements and a blacksmith shop thereon.

GUDGER *v.* WHITE.

The defendant took possession of the land lying between the old and the new channel of the Hardwicke branch in Janu-

J. M. Gudger
vs.
H. A. White
Sept. 5. 1905
H. A. White

J. M Gudger

The foregoing is a
true copy of a survey
made by me in this cause
Respectfully
J. H. Hunter
Surveyor.

ary, 1905. The defendant introduced a deed from the plaintiff to J. K. Hardwicke, dated June 9, 1898, and duly registered. The plaintiff objected to this deed, so far as it was

attempted thereby to convey the second tract described there-
in, as the description was too vague and uncertain to convey
any land.   Objection overruled and plaintiff excepted.   The
second tract is described in that deed as follows: "Beginning
on a point where the two roads intersect and runs so as to em-
brace a front of 44 feet on the Buncombe turnpike road,
west of the branch, and running back to the mountain, the
branch being the southeastern line.   Also all the land oppo-
site said lot to the river; giving a frontage of 44 feet; a deed
having been made to this last named tract No. 2 by Pinckney
Rollins, the then owner; this deed is made to this tract to
better perfect the title and is to be a quitclaim deed thereto,
and only to warrant title against those claiming under me and
no further."   The defendant also introduced deeds and the
records of judicial proceedings from which it appeared that
the title of Hardwicke had vested in him.   He introduced
evidence tending to show that the run or channel of Hard-
wicke branch, called for in the deed of the plaintiff to Hard-
wicke, had changed in 1892 in consequence of a large freshet
in the streams of that section, and that at the time the said
deed was made, in 1898, the course of the channel was along
the line designated on the map at A 1, 2, 3 and 4; while
there was evidence for the other side that in 1892 or 1893 the
freshet caused the branch to break through its banks and form
three prongs, one of which ran along and near the line 3, 2, 1,
and that there was running water in the old channel at the
time the deed to Hardwicke was made by the plaintiff in
1898, and until about two years before the trial; that Hard-
wicke never had any possession east of the old channel
(A, B, C).   The defendant built a stable and put up a rock
wall on the disputed line after being notified by the plaintiff
not to do so until the true divisional line was located.   The
plaintiff introduced in evidence the record of an action
brought by J. K. Hardwicke on December 17, 1897, against
the widow and heirs of Pinkney Rollins for the purpose of

having re-executed the deed of Pinkney Rollins to J. K. Hardwicke, which had been lost. At August term, 1898, a judgment was rendered in that suit granting the relief and directing the judgment to be certified and registered according to the statute in such cases made and provided, the judgment to have the same effect as if the deed had been properly re-executed. The description in the complaint and judgment, in that case, of the land which was alleged and found to have been conveyed by the Rollins deed of May 15, 1875, is as follows: "Lying and being in the town of Marshall, County of Madison, and State of North Carolina, and being the same tract of land on which the said plaintiff now resides, above the old Baird place, next to the branch, exclusive of the road running up said branch from the Buncombe turnpike road, and beginning on a point where the two said roads intersect, and running so as to embrace a front of 44 feet on the Buncombe turnpike road, and running back to the mountain up the branch, embracing the width of 44 feet, including all the land next the branch not occupied by the aforesaid road, and the same width below said Buncombe turnpike road, namely, 44 feet, fronting on the lower side of said road next to French Broad River and running the same width, namely, 44 feet, down the road, the whole boundary here mentioned to include one-half acre; and it further appearing to the court that a deed in fee simple was duly made and acknowledged by Pinkney Rollins and wife, Hester Rollins, to James K. Hardwicke, dated on or about the 15th day of May, 1875, conveying the above-described tract of land," etc. ·

The plaintiff requested the court to charge the jury: 1. That the description of the second tract in his deed to Hardwicke is too vague and uncertain to pass any land or to be aided by extrinsic evidence. 2. That as to the land in dispute, the deed from the plaintiff and wife to Hardwicke, referred to in the last preceding special instruction, constitutes neither title nor color of title beyond the boundaries

defined in said Pinkney Rollins deed therein referred to.
3. That the expressed design and intention of the deed
from J. M. Gudger, Jr., and wife to Hardwicke, in so far
as it relates to the land in controversy, being to perfect said
Hardwicke's title to the land embraced in the Pinkney Rol-
lins deed therein mentioned, the said Gudger deed had no
effect to create a new boundary line between the lands of said
Gudger and Hardwicke, and the said deed cannot be held to
embrace any land not included within the boundaries of said
Pinkney Rollins deed. 4. That when a stream, which is a
boundary, from any cause suddenly leaves its old bed and
seeks a new one, such change of the channel does not affect
the boundary, which remains, as before the change, in the
middle thread of the original channel, although there may be
no running water therein, and it is the duty of the jury
to ascertain where the old channel was and to find its middle
thread to be the true boundary. The court refused to instruct
the jury as requested in the first three prayers, but gave the
instruction contained in the fourth prayer.

At the request of the defendant, the court among other
instructions charged the jury as follows: "If the jury shall
find as a fact from the evidence that on the 9th day of June,
1898, the date of the deed from J. M. Gudger, Jr., to J. K.
Hardwicke, the main channel or thread of the Hardwicke
branch was situated as designated on the map by the figures
1, 2, 3 and 4, you will then answer the first issue in favor of
the defendant, and that the plaintiff is not the owner of the
lands in dispute." It is not necessary to set out more of
the charge, as the remaining portion is not material to the
question decided.

The issue submitted to the jury and the answer thereto
were: "Is the plaintiff the owner and entitled to the pos-
session of the land described in the complaint as amended?
No." Judgment was entered upon the verdict for the de-

fendant. The plaintiff having excepted to the charge and rulings of the court adverse to him, appealed.

*P. A. McElroy* and *Frank Carter* for the plaintiff.
*Zachary & Roberts* for the defendant.

WALKER, J., after stating the case: It was conceded that if the true dividing line between the plaintiff's and the defendant's land is the one designated on the map by the letters ·A, B, C, representing the old channel of the Hardwicke branch, then the plaintiff is entitled to recover, but if the line is the one shown by the figures A 1, 2, 3 and 4, then the defendant owns the land in dispute. So that the only question in the case is to be solved by the location of the dividing line, and this turns upon the construction of the deed from the plaintiff to Hardwicke. It is not difficult by reading the deed to reach a satisfactory conclusion as to what the parties meant, and we are required by the settled canon of construction so to interpret it as to ascertain and effectuate the intention of the parties. Their meaning, it is true, must be expressed in the instrument; but it is proper to seek for a rational purpose in the language and provisions of the deed and to construe it consistently with reason and common sense. If there is any doubt entertained as to the real intention, we should reject that interpretation which plainly leads to injustice and adopt that one which conforms more to the presumed meaning because it does not produce unusual and unjust results. All this is subject, however, to the inflexible rule that the intention must be gathered from the entire instrument "after looking," as the phrase is, "at the four corners of it."

The description of the second tract contains, first, a general description of the land, which corresponds with that in the deed of Pinkney Rollins to J. K. Hardwicke, dated in 1875, as set forth in the complaint of Hardwicke and in the

141—33

decree which was rendered in the suit between him and the heirs of Pinkney Rollins; and, second, a reference to the deed of Rollins, dated in 1875, and a statement that the deed of 1898 was intended to supply a missing link, namely, the Rollins deed, which had been lost, and to take its place as to the second tract conveyed. "Courts are always desirous of giving effect to instruments according to the intention of the parties, so far as the law will allow. It is so just and reasonable that it should be so, that it has long grown into a maxim that favorable constructions are put on deeds." *Kea v. Robeson,* 40 N. C., 373; *Rowland v. Rowland,* 93 N. C., 214. "Words shall always operate according to the intention of the parties, if by law they may, and, if they cannot operate in one form, they shall operate in that which by law shall effectuate the intention. This is the more just and rational mode of expounding a deed, for, if the intention cannot be ascertained, the rigorous rule is resorted to, from the necessity of taking the deed most strongly against the grantor." *Campbell v. McArthur,* 9 N. C., 38. *Chief Justice Taylor* also says in the same case, p. 38: "The grantor has referred to that patent as the means of correcting any mistake in the description of the land, and of ascertaining what his intent was in making the deed." In *Ritter v. Barrett,* 20 N. C. (reprint), 266, *Judge Gaston,* for the court, after referring to the rule that one deed may by proper reference to another show what was really intended to be conveyed, applies it to the facts of that case and says: "The very purpose of the reference would seem to be to ascertain with more particularity what it was apprehended might not have been otherwise sufficiently described. They, therefore, declare their intent to convey unto John Sowell the same land which Jacob McLindon sold to Isaac Sowell. If, therefore, in the description of the land thus conveyed, there be found any inaccuracy or deficiency, that inaccuracy is corrected and that deficiency supplied the moment we ascertain the true boundaries of Isaac Sowell's

purchase, and these appear upon the face of McLindon's deed." This case was followed by *Everitt v. Thomas,* 23 N. C., 252, in which *Chief Justice Ruffin* says: "We do not doubt that, by a proper reference of one deed to another, the description of the latter may be considered as incorporated into the former, and both be read as one instrument for the purpose of identifying the thing intended to be conveyed." He further says that this is especially so when the calls of the two deeds, it turns out, are not inconsistent with each other and there is a manifest intention by the later deed to convey the whole or a part of the land described in the earlier one. In such a case, the reference will be allowed to help an imperfect description, so as to make it conform to the principal intention. *Cooper v. White,* 46 N. C., 389. Only one deed is shown to have been made by Pinkney Rollins to J. K. Hardwicke, and that is the deed of 1875. The plaintiff's deed to Hardwicke is therefore a sufficient reference to that deed. *Ritter v. Barrett, supra.* The description in the first deed must be considered as if it had been inserted in the second, and the latter deed then construed with that description in it. *Hemphill v. Annis,* 119 N. C., 514. "Where one deed refers to another for a description, it is to be taken as if embodied in the deed referring to it, and the premises as therein described will pass under it." 4 Am. & Eng. Enc. (2 Ed.), 803. The descriptions in the two deeds being in substance the same, it is very clear by a fair construction of the deed of 1898 that, as to the second tract therein described, the plaintiff only intended, and Hardwicke shared this intention with him, to convey the parcel of land as it was at the time the Rollins deed was executed. In other words, that the eastern boundary should be the Hardwicke branch, as then located, the call under the law extending to the middle thread of that stream. This fact is to be necessarily inferred from the face of the deed so far as the second tract described is concerned, as it was con-

veyed to supply a missing or lost link in Hardwicke's chain of title, and the deed expressly states that it is the same tract which was conveyed by deed to Pinkney Rollins, and that it is "this tract," meaning the Rollins tract as conveyed by the deed of 1875, which the parties then conveyed by the deed of 1898. If there were any repugnance between the particular description (if we may so call it) which precedes and that which we have just mentioned, there might be more difficulty in the construction; but that particular description is not at variance with the one in the Rollins deed, and the only question is whether the land should have the branch, as it then was, for one of its boundaries, or as it was afterwards changed to another bed by the freshet. The deed of 1898 furnishes the strongest proof that neither of the parties supposed, or could have supposed, that Hardwicke was acquiring title to land by that deed which was not covered by the Rollins deed. The reference most certainly is to the same land which was conveyed by the Rollins deed, and no more or less than that was intended to pass to Hardwicke by the deed of 1898. It is chiefly a question of intention to be deduced from the terms of the deed, and each case must in a measure be decided by itself. Where the description in a deed closes with a clause which clearly and unequivocally sums up the intention of the parties as to the particular property conveyed, such clause should have its proper effect upon all the antecedent phrases in the description, and is surely entitled to much weight in determining the true construction of the deed. *Ousby v. Jones,* 73 N. Y., 621. That case decides that it should have controlling effect in determining what was intended to be conveyed by the deed, but we need not go so far in order to justify the conclusion we have reached.

An illustration of the principle that only the interest will pass which the deed clearly shows was intended to be conveyed, is to be found in *McAlister v. Holton,* 51 N. C., 331.

This court decided in *Davidson v. Arledge*, 88 N. C., 326, that a dispute as to the true location of a line separating two parcels of land must be determined by an interpretation of the descriptive words in the deeds, in order to ascertain the intention of the parties. "The court looks into the instrument itself to ascertain what is meant to be conveyed and uses parol evidence to fit the description to the thing." Page 332. After all, the simple question is, what does the whole description show was actually intended to be conveyed? When reading the deed and looking at the facts and circumstances as they appear, what impression is left on the mind as to the purpose of the parties? *Wuesthoff v. Seymour*, 22 N. J. Eq., 66. Cases from other States are much in line with our own. *Rutherford v. Tracy*, 48 Mo., 325; *B. S. Inst. v. Crossman*, 76 Me., 577; *Hudson v. Irwin*, 50 Cal., 450; *Masterson v. Munroe*, 105 Cal., 431; *Getchell v. Whittemore*, 72 Me., 393. In the last cited case it was held that where a deed describes the land as the premises conveyed to the grantor by another deed, to which reference is made for a particular description, it will not give the grantee title to a lot which was excepted from the deed to which reference was made, although the title to the excepted lot was in the grantor of the last deed at the time of executing it. If the intention is clearly manifested to describe the same, and the identical, property as conveyed by the former deed, the later deed will be held to operate according to the intention. And is this not a just and reasonable rule? Why should we disappoint the intention of the parties? In *Rutherford v. Tracy*, *supra*, a very learned discussion of the rule of construction will be found showing the trend of modern judicial thought upon the subject. The ancient maxim, it is said, was that "the first deed and the last will shall operate," but even this well settled principle does not impair the other one that the law attempts always to reconcile apparently repugnant provisions, and it will consider and give effect to the whole

and every part of a will, deed or contract when consistent with the rules of law, in order to effectuate the obvious intention of the parties.

It is not necessary in this case to decide that the deed of 1898 did not take effect at the time of its delivery as to the second tract conveyed, but did take effect as of the date of the Rollins deed in 1875. A deed may be said to take effect generally when delivered, and it was so held in *King v. Little,* 61 N. C., 484, and in the same case in equity with names reversed—*Little v. King,* 64 N. C., 361. But those two cases and *Henley v. Wilson,* 77 N. C., 216, were decided upon their peculiar facts and in order to carry out the true intention of the parties, as will be observed. In the *Little* case, Mrs. King had bought the land from Williams in 1854 and taken a deed and afterwards sold it, so that eventually Williams again acquired the title by purchase. He then conveyed to Mrs. King, with a memorandum at the foot of his deed to the effect that the deed was executed to supply the place of Mrs. King's first deed, which had been lost. It will be seen, at a glance, that it was necessary to hold that the memorandum was only explanatory and not controlling, as Williams would have been doing a vain thing, if his second deed should be considered as merely supplying the place of the first deed, and not as conveying any present estate he owned, for it would not then even operate as a quit-claim. The court construed the instrument according to the intention of the parties. And the same may be said of *Henley v. Wilson,* with this added observation, that, there, the court said the intention of the parties would be effectuated. But in our case, it being only a matter of construction for the purpose of ascertaining the intention of the parties and giving it effect, as that intention is manifest, the deed of 1898 will be read as if it had been executed in 1875, and interpreted according to natural conditions as then existing, though in a technical sense it may be said to take effect as

of date of its delivery. Such was the ruling in *Hodges v. Spicer,* 79 N. C., 225, and *Phifer v. Barnhart,* 88 N. C., 333. While there may seem, at first thought, to be a conflict between the last two cited cases, on the one side, and *Little v. King* and *Henley v. Wilson,* on the other, it will be found, we think, upon a close examination to be more apparent than real. In all these cases, the object was to discover the real intention and when ascertained to execute it. If there is any conflict, though, it is not necessary that we should further attempt to decide which is right or to reconcile any seeming repugnancy, as our case must turn upon a very different principle from the one therein discussed. We have merely construed the deed according to the intention, and it can make no difference whether it has *ex post facto* operation, as of the date of the Rollins deed in 1875, by the fiction of relation, or takes effect as of the date of the plaintiff's deed to Hardwicke in 1898. No intervening rights have accrued to create any practical difference as to the time of its operation. The Hardwicke deed of 1898 should be read simply as of the date of the Rollins deed of 1875.

It was, of course, a question for His Honor to decide as one of law, what was the boundary, and for the jury to determine where it is actually located. *Davidson v. Arledge,* 88 N. C., 331; *Jones v. Bunker,* 83 N. C., 324; *Redmond v. Stepp,* 100 N. C., 212; *Davidson v. Shuler,* 119 N. C., 586. The case of *Redmond v. Stepp, supra,* is a strong authority sustaining the principle which we have said should guide us in this case, namely, the intention of the parties with reference to the boundary, which must be determined by the deed itself and the location of the "natural object, marked tree or adjoining tract," as it existed at the time, to which the parties evidently referred.

It follows from all that has been said that His Honor should have given the instructions requested by the plaintiff

in his second and third prayers as numbered in the statement of the case. For convenience we have condensed the prayers of the plaintiff into four only, which contain the substance of those necessary to be noticed. His Honor seems to have taken the same view of the law that we have, if we look at his charge as a whole, but he inadvertently overlooked the fact, when he charged the jury to consider the Rollins deed if the tracts described in that and the Hardwicke deed were the same, that there are two tracts described in the latter deed and only one in the former, and the jury may have been misled by this instruction, but at any rate the plaintiff was entitled to have given the instruction he requested, and the court erred when it afterwards charged the jury, at the request of the defendant, contrary to the principle therein stated.

As to the other point presented, that the Hardwicke deed is too vague and uncertain in its description of the second tract of land to convey any title thereto, we are with the defendant. There is no patent ambiguity and we think the description is sufficiently definite for the land to be identified under the Act of 1891, chapter 465, section 1 (Revisal, section 1605), and certainly when it is read in connection with the deed of Rollins to Hardwicke. *Perry v. Scott,* 109 N. C., 374; *Warren v. Makely,* 85 N. C., 12.

We have not referred to the competency of any of the evidence introduced and considered by us, as no objection was made thereto, and if there had been any, this is not the defendant's appeal. If any had been admitted over his objection, the ruling would not necessarily be the subject of review in this court when the plaintiff alone appealed. *King v. Cooper,* 128 N. C., 347.

The error committed by the court in regard to the effect of the description of the second tract in the deed of the plaintiff to Hardwicke, requires that a new trial should be awarded.

New Trial.