GEORGE H. SMATHERS ET AL. v. E. H. JENNINGS ET AL.

(Filed 12 January, 1916.)

**1. Deeds and Conveyances—Defective Probate—Evidence—Identification of Lands.**

Where a deed in the chain of title of a party in an action to recover lands refers to another deed, the latter deed may be offered in evidence to identify the lands, or in aid of the description in the former deed, though having a defective probate; and where such deed has afterwards been registered upon a proper probate, the objection becomes immaterial.

**2. Wills, Foreign—Correct Certificates—Lands.**

Objection to the introduction of a will in plaintiff's chain of title in an action to recover lands, situated in North Carolina, on the ground that the record from the Orphan's Court of Baltimore was not properly certified, is untenable, it appearing that the register and custodian of wills certified under seal that it was a true copy; the presiding judge that the certificate of the register is in due form, and the register certified under seal that the person signing the last certificate was the presiding judge of the court.

**3. Appeal and Error — Registration — Damaged Records — Immaterial Evidence.**

In an action to recover lands, certain pages of the registration books, admitted to be genuine, were put in evidence to aid the description of the lands described in a deed in the plaintiff's chain of title, and testimony, over the defendant's objection, was admitted that during the Civil War the then register of deeds had hidden the books under a log he afterwards had difficulty in finding, and that the book was damaged. Under the circumstances of this case the admission of the evidence is held as immaterial.

**4. Trials—Instructions—Burden of Issues—Burden of Proof.**

Where in an action to recover lands the trial court has placed the burden of the issue on the plaintiff, and instructs the jury that he must establish his title by the greater weight of the evidence, and that if he had done so, then the burden of proof was on the defendant to establish his title by adverse possession under color, the charge does not shift the burden of the issue from the plaintiff, and it is not objectionable.

APPEAL by defendant E. H. Jennings from *Cline, J.,* and a jury, at May Term, 1915, of JACKSON.

The plaintiffs, claiming to be the owners in fee of two tracts of land located in Jackson County, sued the defendants under section 1589 of Revisal of 1905, alleging that the lands were granted by the State to one John T. Foster, and that they derived title by various *mesne* conveyances from and through said John T. Foster, and that they are informed that the defendant E. H. Jennings claims to be the owner of an estate or interest in said two tracts of land, which claim is adverse to the rights of these plaintiffs, and that the said R. G. or Richard Jennings also makes some kind of a pretended claim to said two tracts of land.

The defendant E. H. Jennings denies the allegations of the plaintiffs and admits that if the two tracts of land claimed by plaintiffs and

described in their complaint are embraced within the lands of the defendant E. H. Jennings, he, the defendant E. H. Jennings, claims an estate and interest therein adverse to plaintiffs.

The defendant R. G. Jennings answers and says that he has no estate or interest in the land claimed by the plaintiffs and claims none, and, further, denies that he has trespassed upon said lands by fishing or otherwise.

A judgment dismissing the action as to R. G. Jennings was entered.

After the commencement of the action the plaintiffs conveyed all of their claim to the lands in controversy to the Wolfe Mountain Lumber Company, and this company was made a party plaintiff before the trial and adopted the complaint of the plaintiffs therein.

In the progress of the trial defendants excepted to certain documents offered in evidence by the plaintiffs and to various portions of the charge of the court below.

The jury returned the following verdict:

1. Are the plaintiffs the owners of the lands described in the complaint as State Grants Nos. 190 and 191, and as located on the maps? Answer: "Yes."

2. Do the defendants, or either of them, claim an estate or interest in and to said Grants Nos. 190 and 191, or any part thereof, adversely to the title of plaintiffs? Answer: "Yes."

3. What damage, if any, are plaintiffs entitled to recover of defendants? Answer: "$1."

The defendant E. H. Jennings appealed from the judgment rendered upon the verdict.

*A. Hall Johnston, Eugene Ward, Coleman C. Cowan for plaintiffs.*
*Merrimon, Adams & Adams for defendants.*

ALLEN, J. There are numerous exceptions in the record, but those relied on in the briefs may be considered under four heads:

(1) Plaintiffs introduced as a part of their title original deed of release from Charles F. Mayer to Thomas M. Lanahan, dated 23 April, 1856, and duly recorded in the office of the register of deeds for Jackson County, in Book TT, at page 351, 25 May, 1910, the description in which was as follows, to wit: "All those lands, tracts and parcels situate in Jackson County, State of North Carolina, Thomas B. Lemon conveyed to Mayer by deed dated 17 October, 1855, and registered in said county, in Book A 1, pages 498, 499, 500, said lands consisting of twelve parcels, each of 640 acres, and containing in the aggregate 7,600 acres."

This deed was also recorded in Book A 1, page 753, 17 September, 1856.

For the purpose of aiding the description in the deed of Mayer to Lanahan, recorded, as aforesaid, in Book TT, page 351, plaintiffs offered

certain sheets numbered 498 and 499, which were admitted to have been a part of old Book A of the office of the register of deeds for Jackson County, and on which there purported to have been copied the deed from Thomas B. Lemon to Charles F. Mayer, dated 17 October, 1855, and the probate appearing upon these sheets, and upon which the deed purported to have been recorded, was in words and figures as follows, to wit:

STATE OF MARYLAND—CITY OF BALTIMORE.

On this the 17th day of October, A. D. 1855, before me, Jabez D. Pratt, a commissioner of North Carolina for the State of Maryland, to take the acknowledgment of deeds and to be used or recorded in North Carolina, personally appeared Thomas B. Lemon, personally known to me to be the person named in the aforegoing instrument of writing, and acknowledged the signing and sealing the same to be his voluntary act and deed and desired the same to be recorded as such, and did also acknowledge the memorandum subjoined to said instrument.

Witness my hand and official seal affixed the day and year last aforesaid.                                            JABEZ D. PRATT,
   (Seal.)                               Commissioner of North Carolina.
   Witness:   W. R. BUCHANAN.

To which said record the defendant objected; objection overruled, and the defendant excepted, the court stating that the record was admitted, not because of the sufficiency of the probate, but in order to aid, in so far as it did aid, in the description of the deed offered in evidence upon the probate and registration of 25 May, 1910, and not in itself as a link in plaintiffs' chain of title, but only as evidence of the document referred to, for description in the release deed from Charles F. Mayer to Thomas M. Lanahan.

This deed from Thomas B. Lemon to Charles F. Mayer was afterwards registered in 1909, upon a probate to which there is no objection.

The exception to the introduction of the deed from Lemon to Mayer when first registered upon a defective probate becomes immaterial in view of the fact that it was afterwards registered upon a probate free from objection; but if the probate had not been perfected we are of opinion the record where it was first registered was competent for the purpose for which it was offered, the identification of the land conveyed in the deed from Mayer to Lanahan.

When one deed refers to another for a description, the description in the first deed must be considered as if it had been inserted in the second, and the latter must be construed with that description in it (*Gudger v. White*, 141 N. C., 515), and this is true although the first deed may not be registered. *Collins v. Asheville Land Co.*, 128 N. C., 563; *Watson v. Hinson*, 162 N. C., 72; 13 Cyc., 634; 8 Ruling Case Law, 1078.

In the first of these cases it was held that a plat referred to in a deed executed since 1885 was competent to aid the description, although unregistered, and in the second that a writing recorded as a will upon a defective probate might be incorporated in a subsequent will, properly probated, by reference to it.

It is said in 13 Cyc., 634, "Where a plat is referred to in a description in a deed it may be used to identify the land conveyed, although it does not conform to the statute," and in 8 R. C. L., 1078, "Real estate is sufficiently described in a conveyance by reference for identification to another deed or record specifically mentioned therein which accurately describes it. The map or plat referred to need not be registered."

(2) The plaintiffs introduced as a part of their title the wills of Israel M. Parr and Mary Bowen Parr, probated before the Orphan's Court of the city of Baltimore and recorded in Jackson County. The defendant objected upon the ground that the record was not properly certified, relying on *Riley v. Carter,* 158 N. C., 484.

An examination of the record in the *Riley-Carter case* shows that no defect there pointed out is apparent in this record.

The probates of the wills before us appear to be in due form; the register and custodian of wills certifies under seal that it is a true copy; the presiding judge certifies that the certificate of the register is in due form, and the register certifies under seal that the person signing the last certificate was the presiding judge of the court. The wills were properly admitted in evidence.

(3) T. A. Cox, a witness for the plaintiffs, testified, over the objection of the defendant, that there was a general reputation that the three books from the register's office, A, B, and C, were taken during the war by the then register of deeds and hid under a log; that he forgot the log and had to search a long time before they were found, and that they were badly damaged, etc.

We cannot see that this evidence affected the result upon the issues submitted to the jury, and as it appears to have been admitted for the purpose of identification, it became immaterial upon the abandonment by the defendant of his objection to the introduction of the grants upon which the plaintiffs rely, and upon the admission of the genuineness of the sheets offered from Book A.

(4) His Honor charged the jury on the first issue: "The burden of this issue is fixed by the law upon the plaintiffs, which requires them to satisfy you by the greater weight of the evidence that they are the owners of the land described in these two State grants, and that it is as located on these court maps. The plaintiffs are relying upon a paper title to establish their contention of ownership. They take the position here that they have shown a grant from the State of North Carolina to both of these tracts of land, 190 and 191, and that they have connected

themselves by *mesne* conveyances, which they say give to these plaintiffs, and down to the Wolfe Mountain Lumber Company, the title which the original grantee from the State had in these lands."

He then called the attention of the jury to the deeds in the plaintiffs' chain of title down to a deed to Israel M. Parr, George U. Porter, and Thomas N. Keerl, dated in 1858, and instructed the jury that the burden was on the plaintiffs to satisfy the jury that the next deed in the chain of title was executed by the heirs and devisees of the grantees in the deed of 1858.

He then charged the jury: "If you are satisfied by the greater weight of the evidence that these depositions that were offered in evidence by the plaintiffs correctly show who are the heirs at law of Israel M. Parr and Mary B. Parr, George U. Porter and Thomas N. Keerl, and that they are the true persons who had to execute a deed to convey the title of these three men, deceased, why then, in such case, that is, if they were the heirs and devisees in the will who had the legal title in them by operation of law, or by will, and they are the same persons who conveyed it again, then, to Smathers and Thomas and then on down through them to the Wolfe Mountain Lumber Company, why, upon such findings of fact by you, I instruct you the law is that the deeds are sufficient in form to convey the title, and it would be a connected chain of title from John T. Foster, and those claiming under him, down to the Wolfe Mountain Lumber Company."

This part of the charge is excepted to, but it is not separately considered in the brief.

He further charged the jury: "Now, that is not all they have to do, if they have done that. It is for you to say whether they have shown you, by the greater weight of the evidence, the heirs at law of Parr, Porter, and Keerl, and you are to find the facts upon the questions that I have submitted to you. I say if you find they have done that, shown a paper title in themselves for these old grants, 190 and 191, then there is another thing that they must do before the plaintiffs can ask you to answer this first issue in their favor, at all, and that is, they must locate these grants. They cannot say simply, 'We have got the title,' but they must show you where the land is; they must locate it, and then, later on, they must show you that there is some interference, some claim of title on the same land, by these defendants.

"Well, to conclude this part of the charge, it is a question of fact for you; not a question of law. Does the evidence satisfy you by its greater weight that these plaintiffs have located these two grants as they are laid down here on these court maps?

"Now, the law is this way, gentlemen: if you are satisfied, by the greater weight of the evidence that the plaintiffs have made out their connected chain of paper title to these two old grants, and then you

find that they have correctly located them, according to the lines on the court maps which represent their contentions, then, nothing else appearing, it would be your duty to answer this first issue 'Yes.'

"I want you to listen to that expression, gentlemen, 'nothing else appearing,' because there is another side of the case to be considered upon this issue. We have to take one step at a time. That is the only way my mind can operate, and I think it is the only way yours can. We will have to take it and just develop the whole thing, if we can, one leaf unfolding and another, until we have the flower open before us.

"I say, if they did that, nothing else appearing, it would be your duty to answer this first issue 'Yes.' Why? Because the law is if they connect with the grant and then locate the land, if there was no other evidence in the case, then the law, which gives them the constructive possession of the land, would say that it is their land. It does not matter what length of time had elapsed, or whether anybody had been on it or not, I say the law would give the ownership—a judgment, rather—to the person who had the connected chain of title from the State and could locate his land.

"Now, if you get that far, it does not answer this first issue, but it simply does this: it would answer the issue, as I have said, unless the defendant can come forward with some evidence in the case here—not by offering witnesses, necessarily, for he could use the plaintiff's witnesses, if sufficient. Then the defendant would have to show the jury, in opposition to that title and to overcome it, that he had a title which, in law, would supplant that legal title and take it out of the plaintiffs and give it to the defendant. In other words, the law is that the duty of coming forward then with some proof to overcome this *prima facie* case devolves upon the defendant in this action.

"Well, now, he recognizes that as being the law, and he says he does come forward here with evidence that he says ought to show you that he, and not the plaintiffs, is the real owner of this land. He is only required to establish his contention by the greater weight of the evidence; not any more degree of proof than was imposed upon the other party, at the outset. And he says that he has established that, and he asks you to find that he is the owner by possession under color of title.

"If you find from the evidence that the plaintiffs have located the said grants as contended by them, as shown by the solid lines on the map, and should further believe the evidence as to who are the sole heirs at law of Thomas N. Keerl, Mary B. Parr, Israel M. Parr, and George U. Porter, the court charges you that the plaintiffs have made out a *prima facie* case, entitling them to recover in this action, nothing else appearing, and the burden of proof thereby is shifted to the defendant to show either a senior and superior title from the State of North Carolina for the said lands or to connect himself with a superior title from a common

source in plaintiffs' title, or to show colorable title and continuous, open, notorious, adverse, and exclusive possession in himself and those through, by, and under whom he claims, under such color for seven years prior to the institution of this suit."

The statement of the contentions of the parties and parts of the charge not relevant to the defendant's exceptions are omitted. The defendant relied on an adverse possession under color.

The defendant excepted to the latter part of the charge, insisting that it placed the burden of the first issue on him; but we do not so read the charge..

His Honor distinctly charged the jury that the burden of the first issue was on the plaintiffs, and then that they must satisfy the jury by the greater weight of the evidence of the truth of each fact upon which the title of the plaintiffs depended.

He then told the jury, if these facts were established, that the plaintiffs would be entitled to have the issue answered in their favor, nothing else appearing; and that if the defendant wished to further contest the right of the plaintiffs he must go forward with the proofs and satisfy the jury as to his claim of adverse possession under color.

When he said "the burden of proof thereby is shifted to the defendant" the statement was predicated upon a finding by the jury of the facts relied on by the plaintiffs, and which in the absence of other evidence made out their title, and he did not then charge the jury that the burden of the issue shifted, but that the burden shifted to prove adverse possession under color.

This is clearly the meaning of the charge, and, so understood, it is free from error.

We have carefully considered the whole record, and find

No error.