**ATLANTIC GREYHOUND CORP. v. SMITHDEAL et al.**

No. 6327.

United States Court of Appeals Fourth Circuit.

Argued Oct. 18, 1951.

Decided Nov. 14, 1951.

9. For this summary of the escheat in the Klein case see this Court's opinion in United States v. Klein, supra, note 3.

Robert Lewis Young, Richmond, Va. (I. E. Carlyle, W. P. Sandridge and Womble, Carlyle, Martin & Sandridge, all of Winston-Salem, N. C., Oscar L. Shewmake, John C. Goddin, Shewmake, Gary, Goddin & Blackwell and John G. May, Jr., all of Richmond, Va., on brief), for appellant.

Roy L. Deal, Winston-Salem, N. C. (F. Gaither Jenkins, Winston-Salem, N. C., on brief), for appellee.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

PARKER, Chief Judge.

This is an appeal in an action to obtain a declaratory judgment. Plaintiff is an interstate bus company, defendants the personal representative of a deceased real estate dealer. The question involved is whether the contract of lease, under which plaintiff has the right to occupy the leased property for fifteen years upon the payment of rental and taxes, gives it also an option to purchase the property during the concluding five years of the term, or whether this option is dependant upon plaintiff's having acquired an option to purchase during the preceding five year period. Defendants contend that only one option to purchase was acquired by plaintiff under the lease contract, that this was for the first five year period of the lease with right to renew or extend the option by payment of a consideration for the two successive five year periods and that, because of plaintiff's failure to pay the consideration and obtain the extension for the second five year period, the option lapsed and plaintiff has no further rights thereunder. Plaintiff's contention is that independent options to acquire options to purchase were created by the lease and that plaintiff, having tendered the consideration and given the notice necessary to acquire the option for the last five year period, is entitled to have it declared in effect. The District Judge interpreted the provisions of the lease in accordance with the contentions of defendants and plaintiffs has appealed.

The facts are that the real estate dealer, Mr. Smithdeal, owned and was acquiring property in Winston-Salem, N. C. upon which plaintiff desired to erect a bus station. This property had a value at that time of around $140,000. Plaintiff leased it with the intention of building the bus station on it and did build such station at a cost of approximately $213,000. The option provisions were inserted in the lease for the manifest purpose of enabling plaintiff to protect itself with respect to this expenditure and are to be interpreted in the light of this purpose.

On November 25, 1940, while Mr. Smithdeal was in the process of perfecting title to the property desired by plaintiff, he wrote plaintiff a letter upon which the option provisions contained in the lease contract were based. The pertinent portion of that letter is as follows:

"I have agreed to extend the proposition to lease you this property, made to you

October 22, fifteen days from this date and will give you an option to purchase this property any time during the first 5 years of this lease, as follows:

"The first year, $140,000; the second year, $142,000; the third year, $144,000; the fourth year $146,000; and the fifth year, $148,000. I will sell you an option to purchase the property during the second five years of the lease for $2,000, which price is to be for the sixth year, $150,000; the seventh year, $152,000; the eighth year $154,000; the ninth year, $156,000, and the tenth year, $158,000. If purchase is made during this 5-year term, the option money of $2,000 is to be credited on the purchase price. If no purchase has been made up to this time, I will sell you an option to purchase during the third 5-year term for $2,000, at a price for the 11th year of $160,000; the 12th year, $162,000; the 13th year, $164,000; the 14th year, $166,-000; and the 15th year, $168,000, with the $2,000 option money to be deducted from the purchase price if sale is made during the last five years."

On January 20, 1941, while the title was being perfected, the parties entered into a contract preliminary to the execution of the lease, which contained the following recital: "Whereas, the Owners and the Atlantic Greyhound Corporation have caused to be prepared a certain Lease and Option to Purchase, a copy of which is attached hereto, and which correctly sets forth the terms upon which the Owners are willing to lease, sell and give options to purchase, and the terms upon which the Atlantic Greyhound Corporation is willing to rent the said property".

On May 5, 1941, the contract of lease between the parties was executed for a term of fifteen years. Plaintiff agreed to pay rental of $500 per month except for the first three months of the term and to pay the city and county taxes on the property and was given the right to erect a bus station thereon. The option provision with which we are here concerned was contained in paragraph eight, which is as follows:

"(8) The Landlords hereby grant unto the Tenant, its successors or assigns, the option to purchase the premises hereinbefore described, together with all buildings, structures and improvements of any character thereon, together with all privileges and appurtenances thereunto belonging, upon the following terms:

"From the date of this lease an Option to Purchase to July 1, 1942, for the sum of $140,000 in cash. From July 1, 1942, to July 1, 1943, for the sum of $142,000 in cash. From July 1, 1943, to July 1, 1944, for the sum of $144,000 in cash. From July 1, 1944, to July 1, 1945, for the sum of $146,000 in cash. From July 1, 1945, to July 1, 1946, for the sum of $148,000 in cash.

"The Landlords further agree that at any time prior to July 1, 1946, for the additional sum of two thousand dollars ($2,000) cash, to be paid by the Tenant, its successors or assigns, they will grant to the Tenant, its successors or assigns, a further option to purchase the premises hereinbefore described, together with all buildings, structures and improvements of any character thereon, together with all privileges and appurtenances thereunto belonging, upon the following terms:

"From July 1, 1946, to July 1, 1947, for the sum of $150,000 in cash. From July 1, 1947, to July 1, 1948, for the sum of $152,-000 in cash. From July 1, 1948, to July 1, 1949, for the sum of $154,000 in cash. From July 1, 1949, to July 1, 1950, for the sum of $156,000 in cash. From July 1, 1950, to July 1, 1951, for the sum of $158,-000 in cash.

"The sum of two thousand dollars ($2,000) paid for this option to purchase shall be credited upon the purchase price if the option is exercised.

"The Landlords further agree that at any time prior to July 1, 1951, for the additional sum of two thousand dollars ($2,000) cash, to be paid by the Tenant, its successors or assigns, they will grant to the Tenant, its successors or assigns, a further option to purchase the premises hereinbefore described, together with all buildings, structures and improvements of any character thereon, together with all privileges and appurtenances thereunto belonging, upon the following terms:

"From July 1, 1951, to July 1, 1952, for the sum of $160,000 in cash. From July 1, 1952, to July 1, 1953, for the sum of $162,000 in cash. From July 1, 1953, to July 1, 1954, for the sum of $164,000 in cash. From July 1, 1954, to July 1, 1955, for the sum of $166,000 in cash. From July 1, 1955, to the end of this lease for the sum of $168,000 in cash.

"The sum of two thousand dollars ($2,000) paid for this option to purchase shall be credited upon the purchase price if the option is exercised.

"The Tenant, its successors or assigns, shall give notice to the Landlords, their heirs and assigns, of intention to exercise this option to purchase not less than thirty (30) days prior to the end of each option year. If the Tenant, its successors or assigns, should exercise the option herein granted to purchase, prior to July 1, 1946, *or if thereafter it should purchase an option to purchase,* as herein provided, and exercise such option to purchase, the Landlords, their heirs and assigns, may elect, in lieu of the cash purchase price herein specified, to receive five thousand dollars ($5,000) less, *upon terms hereinafter specified,* * * *." (Italics supplied.)

The plaintiff did not exercise the option to purchase during the first five year period nor did it at any time prior to July 1, 1946, pay or tender to the lessor the sum of $2,000 so as to acquire an option to purchase during the second five year period. Plaintiff did attempt to purchase the property later in 1946, at the price of $150,000 and in 1949 at the price of $160,000, but these offers were declined. Prior to July 1, 1951, plaintiff tendered to the lessor the $2,000 for the purpose of acquiring an option to purchase for the third five year period, but the offer was declined on the ground that the option had expired on June 30, 1946, by reason of the failure of plaintiff to pay $2,000 and secure an option to purchase for the second five year period.

The only question in the case is whether the option provisions of the lease are to be interpreted as granting a single option, which has expired because of plaintiff's failure to have it extended, or as granting rights, which are not dependent on each other, to acquire option contracts for the second and third five year periods. There is a natural tendency to think of the rights of the parties in terms of the ordinary renewable lease or option contract with which we are familiar and to construe the language used as though the parties were trying to express the terms of this sort of a contract. It is clear, however, that, if this is what they intended, it would have been perfectly easy for them to have said so, and that to construe the language used to have this meaning is to read into it a condition precedent which it does not contain, viz., that the option for the third period is granted only if the option covering the second period has been obtained.

It is elementary, of course, that the language of the lease must be construed in the light of the transactions leading up to it; and when this is done, there can be little doubt that three distinct option rights were intended, just as the contract says, and not one option to be extended at the option of the lessee. Thus, in the letter of November 25, 1940, Mr. Smithdeal says: "If no purchase has been made up to this time (the end of the second five year period), I will sell you an option to purchase during the third five year term," etc. The contract of January 20, 1940, recites that a copy of the lease which is attached "sets forth the terms upon which the owners are willing to lease, sell and give options to purchase". These passages from the letter and from the contract of January 20 show beyond peradventure that the use of language creating three distinct options in the lease was not a matter of inadvertence or a clumsy method of expressing the thought that the customary option with right to renew upon conditions was being created, but that the parties intended exactly what they said, viz., that the lessor would grant an option to the lessee to purchase upon the terms and at the prices stated during the third five year period if the lessee should pay $2,000 for such option prior to July 1, 1951. This is emphasized by the language of the lease contract wherein the lessors provide terms of sale if the lessee

"should exercise the option herein granted to purchase, prior to July 1, 1946, *or if thereafter it should purchase an option to purchase as herein provided * * *.*" (Italics supplied.) The use of this language effectually negatives any contention that upon the failure to pay for the second option, which had to be done prior to July 1, 1946, all right to acquire an option under the contract for the third five year period was ended.

Defendants point to the words "for the additional sum of two thousand dollars", used in connection with the option for the third five year period, and argue that this indicates that the rights with respect to the third period are conditioned upon the payment with respect to the second. It is to be noted, however, that exactly the same words are used in the language with respect to the option for the second period, and that in that connection they could have no meaning except that the $2,000 should be in addition to rent and taxes which lessee was required to pay. When the same language is used with respect to the third period it is but reasonable to give it the same meaning. Certainly it is much more reasonable to do this than to read in as a condition the requirement that an option for the second period shall have been acquired.

It is argued that, if the option for the second period had been purchased and the option had not been exercised, the $2,000 paid for it would have been the property of the landlords with no requirement that it be credited upon the purchase price of the property if purchased during the third option period. This is true; but the prices for the third period were $10,000 higher than the prices for the second period and the lowest price at which the property could be purchased during the third period was $2,000 more than the highest price of the second. It is argued, also, that it is unreasonable that an experienced real estate dealer would have been willing to tie up the property during the last five years of the fifteen year period and not during the preceding period; but there is nothing un-reasonable in this when it is remembered that the prices for the last period were $10,000 higher than the prices for the preceding period and there is nothing more unreasonable in giving the lessee an option to purchase during the last five years of the lease than upon its expiration, which is not an unusual provision. Certainly, it is more reasonable to think that the parties intended this than that they intended that the lessee, who had more invested in the property than the lessor, should lose his investment upon failing to acquire an option to purchase during the middle period of his term. If the lessee did not acquire an option to purchase during the second 5-year period he was bound to pay rent during that period and to pay a higher price if he acquired an option to purchase for the third period and exercised it; but there is nothing in the language of the lease to justify the holding that the option with respect to the third period was forfeited by failure to acquire one for the second.

It is argued that the property was being rented at a low rental. If this were true, it would throw little light upon the interpretation of the contract; but, as a matter of fact, the rental provided an income at a return of more than 4% on the initial value of the property ($140,000), after the payment of city and county ad valorem taxes. This is to be compared with the 3% interest on deferred payments which the landlord was to receive in case of purchase by the lessee.

We think that there is little, if any, ambiguity in the contract if preconceived notions about extension of option contracts are ignored and only the language used by the parties is considered and given its ordinary meaning. This is true even though we apply the strict and technical rules of interpretation ordinarily applied to option contracts. Those rules, however, have no application here. What we have is, not an ordinary option contract, but an option contained in a lease under which the lessee has more money invested in the property than the lessor. The options have been included in the lease, not merely to enable the lessee to acquire the lessor's property

but primarily to prevent the lessee's own expenditure in improving the property being lost upon the expiration of the lease. Under these circumstances the rule of interpretation by which we should be guided is that which was well stated by the Supreme Court of North Carolina in Gudger v. White, 141 N.C. 507, 515, 54 S.E. 386, 389, quoted in Ipock v. Gaskins 161 N.C. 673, 77 S.E. 843, 846, as follows: "If there is any doubt entertained as to the real intention, we should reject that interpretation which plainly leads to injustice, and adopt that one which conforms more to the presumed meaning, because it does not produce unusual and unjust results."

In First Citizens Bank & Trust Co. v. Frazelle, 226 N.C. 724, 40 S.E.2d 367, 369, a renewable lease contained an option to purchase and it was not clearly expressed whether renewal of the lease resulted in a renewal of the option. In holding that it did, the Supreme Court of North Carolina said: "The defendants contend the lease is ambiguous in its provisions relating to the renewals. It is the law, however, that in construing provisions of a lease relating to renewals, where there is any uncertainty, the tenant is favored and not the landlord."

While the matter involved here is not technically a forfeiture by the lessee, forfeiture is what it comes to in effect, since the lessee's investment in the property is forfeited if the right to exercise the option is lost; and it is too well settled to warrant citation of authority that forfeitures are favored neither in equity nor in law.

For the reasons stated, the judgment appealed from will be reversed and the case will be remanded with direction to enter judgment for plaintiff to the effect that the option to purchase during the last five year period of the lease has not been lost as contended by defendants but has been acquired by plaintiff as the result of the tender made if the tender is kept good.

Reversed.